[No. 21087–4–I. Division One. August 10, 1988.]

*In the Matter of the Personal Restraint of* BRUCE BARRY GEORGE, *Petitioner.*

136

*Helen A. Anderson* of *Washington Appellate Defender Association,* for petitioner.

*Norm Maleng, Prosecuting Attorney,* and *Donna Wise, Deputy,* for respondent.

COLEMAN, A.C.J.—Bruce Barry George brings this personal restraint petition challenging the length of his minimum sentence.

On January 1, 1983, George was charged by information with indecent liberties, second degree statutory rape, and incest. On January 25, 1983, George pleaded guilty to each count, admitting:

> (Count I) On or between 6/1/80 and 11/22/82 I did cause [TG] less than 14 years of age, not my spouse to have sexual contact with me in King County. (Count II) Between 6/1/80 and 11/22/82 I did engage in sexual intercourse with [NG] who was less than 14 years of age in King County. (Count III) Between 6/1/80 and 11/22/82 I did have sexual intercourse with my daughter in King County (I knew her to be my daughter).

On March 8, 1983, the trial court entered an order deferring imposition of sentence on certain conditions. Under the terms of the order, the deferral of the sentence was contingent on, among other things, George's entering and completing mental health counseling for sexual deviancy.

George was admitted into treatment at Northwest Treatment Associates in March 1983. In a report dated March 1, 1984, however, Northwest recommended that he be transferred to the sexual psychopathy program at Western State Hospital because that facility's program was the "treatment of choice" for George and because he had attendance problems and committed rule violations at Northwest.

On June 11, 1985, the court entered an order modifying George's probation, requiring him "to enter and successfully complete the sexual psychopathy program at Western State Hospital." On February 23, 1987, Western State submitted a report to the court indicating George had completed step 2 of 10 required steps in their inpatient program. When the first probationary period was about to expire, George refused to agree to extend his probation another 5 years. Thus, the evaluation concluded that George was not amenable to treatment; that he was not safe to be released in the community; and that he suffered from

paraphilia, pedophilia, alcohol abuse, and a mixed personality disorder.

As a result of this report, the court set a probation revocation hearing. At that hearing, the court ruled that George's failure to successfully complete the Western State program violated a condition of his probation. The court offered George two choices—agree to return to Western State or go to prison. George refused under any circumstances to return to Western State.

George argued that he should be sentenced according to sentencing reform act (SRA) presumptive ranges which, he claimed, required the three charged counts to be served concurrently with credit for time served. The State urged the court to consider the differences between charging practices in effect when George was formally charged and those in effect post–SRA. The State argued that George would have been charged with multiple counts under post–SRA practices, as many as three per victim, instead of the one count per victim he was charged with, and that the court should impose sentences as if George had pleaded guilty to three counts per victim.

The court recognized that the charges brought against petitioner did not reflect the magnitude of his crime and thus neither would the SRA standard range for those charges. The court found that George's confession would have provided the basis for filing multiple charges, noting that it was impossible to say precisely how many counts per victim would have been charged. Nonetheless, his multiple offenses against each victim provided, in the trial court's view, the "substantial basis of an exceptional sentence"[1] beyond what petitioner would receive if SRA standard range sentences were rotely imposed on his guilty plea to the three counts of sexual misconduct. Moreover, the court

---

[1]Technically, appellant did not receive an exceptional sentence since he was not sentenced under the SRA. In reality, he received a minimum term which exceeded the SRA standard range for the offenses for which he was convicted. Because we analyze appellant's sentence in light of the SRA, we refer to his sentence as "exceptional" for the sake of convenience.

felt that the violent and predatory nature of the crimes and the fact that petitioner had proven unamenable to treatment also justified an exceptional sentence.

The court then essentially followed the State's recommendation, calculating petitioner's sentence as if he had pleaded guilty to three counts per victim, not because that was exactly what he would have been charged with, but as an attempt to ensure petitioner's sentence would reflect the fact of the multiple incidents and to account for the fact that those incidents went uncharged as a result of pre–SRA charging practices.

The court then imposed a sentence beyond the SRA standard range for George's convictions—a minimum of 211 months based on a recalculated standard range of 67 to 89 months on counts 1 and 3 and 77 to 102 months on count 2. (The SRA standard range for each count is 21 to 27 months on counts 1 and 3, and 26 to 34 months on count 2.) The low end of each recalculated range was used in light of the uncertainty as to precisely what the State would have charged under the SRA. Consecutive sentences were imposed because of the "substantial risk to the community" imposed by George. In its order fixing the minimum term, the court justified its departure from the SRA standard range on the basis that George's "crimes involved multiple crimes against each victim, were predatory and violent, and the defendant is not amenable to treatment after both inpatient and outpatient opportunities."

The only issue before this court is whether the trial court erred in imposing an exceptional term.

Petitioner challenges the justifications for, and the length of, the exceptional sentence.

### USE OF UNCHARGED CRIMES

Petitioner contends that by considering uncharged and unproven acts, *i.e.*, multiple counts per victim, when petitioner was only charged with and pleaded guilty to single counts per victim, the trial court violated RCW 9.94A-.370(2). At the time petitioner was sentenced, that section

provided:

> (2) In determining any sentence, the trial court may rely on no more information than is admitted by the plea agreement, or admitted, acknowledged, or proved in a trial or at the time of sentencing. Acknowledgement includes not objecting to information stated in the pre-sentence reports. Where the defendant disputes material facts, the court must either not consider the fact or grant an evidentiary hearing on the point. The facts shall be deemed proved at the hearing by a preponderance of the evidence. Facts that establish the elements of a more serious crime or additional crimes may not be used to go outside the presumptive sentence range except upon stipulation or when specifically provided for in RCW 9.94A.390(2) (c) [and] (d) . . .[2]

RCW 9.94A.370(2). Courts have consistently held that the SRA forbids use of uncharged acts to justify an exceptional sentence. *State v. McAlpin,* 108 Wn.2d 458, 466, 740 P.2d 824 (1987); *State v. Woody,* 48 Wn. App. 772, 779, 742 P.2d 133 (1987).

The State, however, responds that petitioner was not sentenced for an SRA offense, but for a pre–SRA offense as to which his probation had been revoked. If petitioner had been sentenced to prison at the time of his conviction instead of receiving a deferred sentence, it would have been within the trial court's discretion to consider all of peti-tioner's conduct, including past crimes and not just his charged offenses, when sentencing him. *State v. Hurst,* 5 Wn. App. 146, 148–49, 486 P.2d 1136 (1971).

Petitioner was charged on January 1, 1983; he was convicted March 8, 1983; the SRA became effective July 1, 1984. The SRA's effect is prospective only, directly applying only to those crimes committed on or after July 1, 1984. *In re Blair,* 38 Wn. App. 670, 673–74, 688 P.2d 532 (1984). Nonetheless, the SRA requires that sentences imposed after

---

[2]RCW 9.94A.390(2)(c) and (d) in effect when petitioner was sentenced, provided that the court could consider certain uncharged facts: the economic aspects of an offense or the involvement of controlled substances, neither of which is relevant to the additional facts the court considered in this case.

that date on pre–SRA cases must be "reasonably consistent with the [SRA]". RCW 9.95.011;[3] *see also Addleman v. Board of Prison Terms & Paroles,* 107 Wn.2d 503, 508, 730 P.2d 1327 (1986).

 A recent amendment to the SRA reiterates that the sentencing authority should attempt to impose terms for pre–SRA offenses that are reasonably consistent with the SRA's ranges and purposes; the amendment, however, also notes that, when imposing exceptional sentences, the sentencing authority should consider pre–SRA charging practices:

> (2) After July 1, 1984, the board shall continue its functions with respect to persons convicted of crimes committed prior to July 1, 1984, and committed to the department of corrections. When making decisions on duration of confinement, and parole release under RCW 9.95.100 and 9.95.110, the board shall consider the purposes, standards, and sentencing ranges adopted pursuant to RCW 9.94A.040 and the minimum term recommendations of the sentencing judge and prosecuting attorney, and shall attempt to make decisions reasonably consistent with those ranges, standards, purposes, and recommendations: *Provided,* That the board and its successors shall give adequate written reasons whenever a minimum term . . . is outside the sentencing ranges adopted pursuant to RCW 9.94A.040. *In making such decisions, the board and its successors shall consider the*

[3]RCW 9.95.011 provides in pertinent part:

"Minimum terms. (Effective until June 30, 1992.) When the court commits a convicted person to the department of corrections on or after July 1, 1986, for an offense committed before July 1, 1984, the court shall, at the time of sentencing or revocation of probation, fix the minimum term. The term so fixed shall not exceed the maximum sentence provided by law for the offense of which the person is convicted.

"The court shall attempt to set the minimum term reasonably consistent with the purposes, standards, and sentencing ranges adopted under RCW 9.94A.040, but the court is subject to the same limitations as those placed on the board under RCW 9.92.090, 9.95.040(1) through (4), 9.95.115, 9A.32.040, 9A.44.045, and chapter 69.50 RCW. The court's minimum term decision is subject to review to the same extent as a minimum term decision by the parole board before July 1, 1986."

*different charging and disposition practices under the indeterminate sentencing system.*

(Italics ours.) RCW 9.95.009(2) (effective July 1, 1986). The State argues that the last sentence of this provision justifies an exceptional sentence in petitioner's instance because he was charged with one count per victim, whereas under SRA charging practices the State would have charged multiple counts per victim to reflect the multiple ongoing incidents of sexual abuse perpetrated against each victim.

Petitioner's first response is that a trial court imposing a sentence pursuant to a probation revocation is neither the board nor its successor, and is therefore an entity outside the scope of this provision. In a recent case, *In re Rolston,* 46 Wn. App. 622, 732 P.2d 166 (1987), the court noted that although the parole board had the job prior to July 1, 1986, of fixing all minimum sentences, RCW 9.95.011 mandates that after that date the trial court has the duty of determining minimum sentences for crimes occurring prior to July 1, 1984, the effective date of the SRA, but sentenced after that date. *Rolston,* at 623. In *Rolston,* the defendant's crime was committed prior to the effective date of the SRA, and he received probation pursuant to a guilty plea to indecent liberties. After failing to complete a sex abuse treatment program and after the effective date of the SRA, the defendant's probation was revoked, and he was sentenced to a term of 20 months, which was outside the SRA standard range of 12 to 14 months. The *Rolston* court found that the trial court sentencing the defendant under RCW 9.95.009(2) was acting as a successor to the parole board. "The trial court, as the successor to the board with the responsibility to set minimum terms, must also be guided by this language [requiring reasonable consistency with the SRA]." *Rolston,* at 626. It is manifestly apparent that the trial court is acting as a "successor" to the parole board when, pursuant to the newly enacted statute, it undertakes sentencing decisions formerly performed by the parole board. We agree with the *Rolston* court and also find that the trial court is a "successor to the board."

Petitioner next argues that by enacting the amendment, the Legislature did not intend for the board or court to review the record, determine what would have been charged under pre–SRA charging practices, and set the standard range accordingly, because to do so undermines one of the principal tenets of the SRA—that of not permitting uncharged or unproven acts to increase a term of incarceration. The purpose of the recent amendment, RCW 9.95-.009(2), is "[t]o reduce the discrepancies between the time served by inmates [who commit similar crimes] under the former and new systems". *Rolston*, at 625.

The amendment is a clear attempt by the Legislature to harmonize pre– and post–SRA sentencing practices and to avoid the inevitable inequities and discrepancies that would otherwise occur were SRA sentencing practices merely to be superimposed on cases initially charged under pre–SRA practices. *See Addleman*, at 511. The pre– and post–SRA sentencing systems are fundamentally different. Under the SRA, only offenses charged and proven can be used to determine the term of incarceration. RCW 9.94A.370; *State v. McAlpin*, 108 Wn.2d 458, 466, 740 P.2d 824 (1987). Under pre–SRA practices, however, defendants often entered into plea agreements in which it was understood the sentencing authority would consider surrounding circumstances and uncharged acts in setting a term of incarceration.[4] *See* D. Boerner, *Sentencing in Washington*

---

[4]Prior to the SRA, a convicted defendant's minimum term of incarceration was set by the Board of Prison Terms and Paroles. *State ex rel. Alldis v. Board of Prison Terms & Paroles*, 56 Wn.2d 412, 418, 353 P.2d 412 (1960). The Board had broad discretion in fixing a minimum term, limited almost solely by its own regulations. *State v. Phelan*, 100 Wn.2d 508, 510, 671 P.2d 1212 (1983). Those regulations required the Board, as a first step in fixing a defendant's minimum term, to compute "a 'guideline term' based on the circumstances surrounding the crime and the prisoner's prior record. WAC Title 381 (Supp. 1981–82), at 1995." *Phelan*, at 517.

Courts and commentators have long recognized the need for the sentencing authority under an indeterminate sentencing system to look beyond the charged acts in order to fix a term of incarceration.

If the parole board is to make its determination properly, it is obvious that it must have all the facts concerning the individual's past and present conduct,

§ 2.4, at 2–27, § 5.2, at 5–2 (1985); *see also State v. Buntain,* 11 Wn. App. 101, 106, 521 P.2d 752, *review denied,* 84 Wn.2d 1007 (1974); *State v. Hurst,* 5 Wn. App. 146, 148–49, 486 P.2d 1136 (1971).

Pre–SRA charging practices reflected broad prosecutorial discretion. In cases such as petitioner's, multiple incidents of ongoing abuse against different victims might well be charged as one count per victim. Indeed, the leeway in those charging practices is evident from the King County prosecutorial guidelines in effect at the time of petitioner's arrest. "Counts involving multiple incidents with the same victim may be dismissed upon a plea to one count." Attachment 4, Brief of Respondent. The actual number of sexual contacts, as well as other pertinent information, might be factored into the State's minimum term recommendation. A judge accepting a plea to one count could consider the uncharged incidents when sentencing. *See Hurst,* at 148–49.

Under the SRA, however, King County's prosecutorial guidelines provide for stricter charging practices: "In cases involving multiple abusive incidents against the same victim by the defendant, counts shall be filed to reflect the nature and extent of contact with the victim, not to exceed five counts." D. Boerner, app. VI, at VI–36 (King County prosecutorial policies under the SRA). Under the SRA, for the State to punish ongoing multiple incidents of sexual abuse differently from single incidents, multiple counts must be charged and proven. *McAlpin,* at 466.

The differences between pre– and post–SRA practices, however, create a potential inequity. Under pre–SRA charging and dispositional practices, a defendant could plead guilty to a single count, when in reality he might have committed multiple incidents against the same victim. In such instances, one count was often charged because all

and cannot be confined to those facts which appear in the information or indictment and in the judgment.
*Alldis,* at 419 n.2.

parties were aware that the court could consider all of the defendant's conduct, including past crimes, when determining his sentence. *State v. Phelan,* 100 Wn.2d 508, 517, 617 P.2d 1212 (1983); *Hurst,* at 148–49. If that defendant received probation that was later revoked after the SRA came into effect, he would ultimately be sentenced after a probation revocation hearing by a court attempting to impose a sentence "reasonably consistent with [the] ranges, standards, [and] purposes" of the SRA. RCW 9.95.009(2). Had he been sentenced prior to the SRA (and hence without any attempt to sentence consistently with it) the totality of his conduct, and not just his charged behavior, would be considered at sentencing. Under a rigid application of the SRA standards, however, his sentence would reflect only the acts for which he was charged and convicted. Thus, his sentence would be significantly less severe than that of a defendant who committed identical acts, but who was charged under the SRA. Under the SRA, the defendant would be charged with multiple counts and his sentence would reflect that fact. The rote application of the SRA to the pre–SRA defendant who pleaded to a single count would create an unfairly lenient sentence when contrasted with the sentence of the SRA defendant who committed identical acts. Thus, the recent amendment requiring the court or board to consider pre–SRA practices effectuates the goal of insuring that pre– and post–SRA offenses are sentenced in a reasonably consistent fashion. *In re Rolston,* 46 Wn. App. 622, 625, 732 P.2d 166 (1987). In enacting the amendment, the Legislature indicated its recognition of the pre-/post–SRA charging discrepancies. It also recognized that if inequities are to be avoided and the goals of the SRA to be achieved, in certain cases a court or board must go beyond the standard range and must continue the practice of considering uncharged crimes if such consistency is to be insured.

Moreover, the amendment effectuates the overall goal of the SRA—that of insuring "that sentences are proportionate to the seriousness of the crime committed and the

defendant's criminal history. RCW 9.94A.010(1)." *McAlpin,* at 464. Finally, RCW 9.95.009(2), which as we interpret it allows the court to consider uncharged crimes when sentencing pre–SRA convictions, does not conflict with RCW 9.94A.370(2), which prohibits use of uncharged crimes, since the latter provision is applicable only to crimes charged under the SRA. The amendment is entirely consistent with the overall goals and purposes of the SRA.

Petitioner next argues that the amendment violates due process insofar as it permits the court to mete out punishment on the basis of acts that were neither charged nor proven. Clearly a post–SRA sentence cannot in any way be based on uncharged or unproved acts. RCW 9.94A.370; *McAlpin,* at 466–67. That is not to say, however, that to do so would necessarily violate constitutional due process rights since the SRA is a statutory scheme adopted by legislative choice, not constitutional mandate. Moreover, the pre–SRA practice of pleading to a single count while having the court consider multiple uncharged incidents at the time of sentencing did not violate due process. *See Buntain,* at 106. Similarly, to carry the pre–SRA practice into the SRA era as a means of transition insuring comparable sentences for comparable crimes, as the amendment does, would not violate due process.

Next, petitioner argues that the amendment constitutes an ex post facto law. A law is constitutionally prohibited as ex post facto if it is retrospective and disadvantages the offender. *Weaver v. Graham,* 450 U.S. 24, 29, 67 L. Ed. 2d 17, 101 S. Ct. 960 (1981); *Addleman v. Board of Prison Terms & Paroles,* 107 Wn.2d 503, 506, 730 P.2d 1327 (1986). The amendment does not, however, disadvantage petitioner since it merely authorizes the court to sentence him as it would have had he been sentenced at the time of his plea agreement. Thus, the sentence he receives under the amendment is theoretically no greater than the sentence he would have received had he been sentenced initially instead of receiving a deferred sentence in order to

undergo psychiatric treatment. Moreover, SRA amendments that attempt to harmonize pre– and post–SRA sentencing practices and which set forth additional reasons for imposition of exceptional sentences are not constitutionally prohibited ex post facto laws. *Addleman*, at 508–09.

Consequently, the trial court was justified in considering pre–SRA charging practices when deciding to impose an exceptional sentence on petitioner.

FUTURE DANGEROUSNESS/AMENABILITY
TO TREATMENT

█ Petitioner next contends that the trial court erroneously considered future dangerousness as a justification for the exceptional sentence. In fact, the courts have clearly recognized that an offender's "future dangerousness" is an acceptable reason for an exceptional sentence. Such sentences have particularly been upheld when the offender has a long history of sex offenses against minors but cannot or will not be treated for deviancy. *State v. Olive,* 47 Wn. App. 147, 150, 734 P.2d 36 (1987); *State v. Woody,* 48 Wn. App. 772, 779, 742 P.2d 133 (1987).

The trial court noted that one reason for imposing an exceptional sentence was that the "defendant is not amenable to treatment after both inpatient and outpatient opportunities." The court ruled that because petitioner refused to return to WSH, he is not amenable to treatment. This basis for an exceptional sentence has been upheld in *State v. Rolston, supra.* In recognition of the fundamental differences between the pre– and post–SRA sentencing systems, the *Rolston* court noted that under the former system, rehabilitation was an underlying goal of criminal punishment, whereas the SRA has abandoned that goal in favor of retribution. *Rolston,* at 625. In imposing an exceptional sentence in the post–SRA era for a pre–SRA offense, "appropriate reasons for departing from the range under the former system, with its rehabilitative goal, will differ from those reasons which are acceptable under the act's determinate sentencing scheme." *Rolston,* at 626. Thus, an

exceptional sentence is justified when a defendant convicted of a pre–SRA offense has shown insufficient rehabilitation, even though that is not a valid justification under the SRA. *See also In re Evich,* 50 Wn. App. 84, 89, 747 P.2d 480 (1987). Petitioner's refusal to continue treatment at Western State Hospital, even though he had only completed 2 steps of the 10–step program, clearly manifests his unamenability to treatment. The court correctly reasoned that if petitioner were untreatable, then he posed a threat to the community beyond that which could be ameliorated by incarceration for a period conforming to the standard range. Thus, an exceptional sentence was justified to isolate petitioner from the community thereby preventing him from continuing to perpetrate his chronic criminal behavior. The SRA sets forth as one of the justifications for incarceration protection of the community. RCW 9.94A.010.

To the extent that petitioner was given an exceptional sentence due to future dangerousness, the decision was amply supported by the record.

### PREDATORY AND VIOLENT

Petitioner next argues that it was error for the trial court to impose an exceptional sentence based on the "predatory and violent" nature of his crimes. In light of the substantial material before the trial court detailing petitioner's crimes against other youngsters as well as his own children, it is unclear which of petitioner's acts in particular were deemed predatory and violent. However, we do not have to determine the validity of this finding.

The trial court correctly recognized that neither petitioner's charged crimes, nor the SRA standard range for those charges, reflected his actual behavior. The court properly imposed an exceptional sentence fully justified by the multiple incidents petitioner committed and by petitioner's future dangerousness as evidenced by failure to complete treatment. When not all of a trial court's justifications for imposing an exceptional sentence are proper, a reviewing court can nonetheless affirm the sentence if the

principal justifications relied on by the trial court are proper and the reviewing court is confident that the trial court, on remand, would impose the same sentence even without considering the improper justifications. *State v. Tunell,* 51 Wn. App. 274, 284, 753 P.2d 543 (1988). We are confident that the trial court would impose the same sentence on remand even if we were to strike the predatory and violent finding.

## CLEARLY EXCESSIVE

Petitioner argues his term of incarceration is "clearly excessive." The length of petitioner's sentence was, in part, calculated by a "formula" derived from what petitioner might have been charged had he been charged post–SRA.

While this approach admittedly involves some speculation and may not always be the desired method of determining the length of a minimum term outside the SRA range, we cannot say that the use of this approach under these circumstances constituted an abuse of discretion.

The length of an exceptional sentence is within the broad discretion of the trial court. *State v. Oxborrow,* 106 Wn.2d 525, 532, 723 P.2d 1123 (1986); *see also State v. Armstrong,* 106 Wn.2d 547, 553, 723 P.2d 1111 (1986) (Goodloe, J., dissenting). That petitioner committed multiple incidents of sexual abuse against his daughters and other youngsters was made abundantly clear from this record. Had petitioner been sentenced prior to the SRA, the trial court or board would have been free to consider his actual conduct, not just his charged crimes. This trial court, however, in sentencing appellant post–SRA was obliged to impose a sentence reasonably consistent with the SRA or set forth adequate written reasons for departing from the SRA sentencing range. The standard range for petitioner's charged behavior obviously did not reflect the magnitude of his crimes. The court then calculated a sentence based on its best estimation of how many counts the prosecutor would have charged. The record provided a tenable basis for the court's estimate.

150

On the circumstances of this case, we cannot say that the sentence was excessive or unreasonable or that the method used to arrive at the sentence was untenable. The court successfully arrived at a sentence that reflects the magnitude of petitioner's criminal behavior. Likewise, had the trial court imposed this sentence without resort to a "formula," the sentence would not have been an abuse of discretion because the record before the trial court fully justifies the length of petitioner's minimum term.

The personal restraint petition is denied.

WILLIAMS and GROSSE, JJ., concur.