[No. 21238-9-I. Division One. January 23, 1989.]

THE STATE OF WASHINGTON, *Respondent,* v. THEODORE L. DAVIS, *Appellant.*

*Neil M. Fox* of *Washington Appellate Defender Association,* for appellant.

*David S. McEachran, Prosecuting Attorney,* and *Mac D. Setter, Deputy,* for respondent.

COLEMAN, C.J.—Theodore Davis appeals from the exceptional sentence imposed pursuant to his pleas of guilty to one count of vehicular homicide and one count of felony hit and run. We affirm.

On the night of April 30, 1987, Davis's automobile collided with an automobile driven by Michael Harris as the

two cars proceeded southbound on I–5 near Bellingham. The Harris automobile was knocked off the freeway. Michael Harris and two of his passengers sustained significant injuries in the accident; the fourth passenger, Laurie Myer, died at the scene of the accident as a result of her injuries. Davis fled the scene, but was soon apprehended by Bellingham police officers. A blood test drawn after his arrest showed appellant had a blood alcohol content of .20. At the sentencing hearing, the court heard testimony from numerous witnesses relating to the injuries caused by the traffic accident and to Davis's history of substance abuse and driving while intoxicated.

The court determined that an exceptional sentence was warranted in this case as a result of finding:

III.

Three other persons received injuries and required medical treatment as a result of the defendant's acts while intoxicated.

IV.

The defendant has shown a general disregard for the danger his chemical abuse causes the public. He has enrolled in numerous court–ordered rehabilitative programs for this chemical abuse condition. He has failed to control the danger he presents. No other different services are available. The defendant, while under the influence of alcohol, has disregarded court orders designed to stop behavior by the defendant which would present a danger to others. The defendant's history of alcohol–related criminal acts, when combined with his apparent disregard for the consequences of his conduct to the public and failure to accept responsibility, and his treatment failures, demonstrates a significant danger to the public when the defendant is released from custody.

The court sentenced Davis to 54 months on count 1 (vehicular homicide); after reconsideration, however, the court reduced that sentence to 48 months. He received a 12–month concurrent sentence on count 2 (hit and run). The standard range for count 1 was 21 to 27 months and for count 2 was 12 to 14 months. It is from the exceptional sentence that Davis appeals.

■ Washington courts follow an established analysis when reviewing an exceptional sentence:

The trial court may impose a sentence outside the standard range if it finds that there are "substantial and compelling reasons justifying an exceptional sentence." RCW 9.94A.120(2). Whenever an exceptional sentence is imposed, the court must set forth the reasons for its decision in written findings of fact and conclusions of law. RCW 9.94A.120(3). The statute provides a list of factors which the court may consider in the exercise of its discretion to impose an exceptional sentence, but these factors are only illustrative and are not to be considered exclusive. RCW 9.94A.390; *State v. McAlpin*, 108 Wn.2d 458, 463, 740 P.2d 824 (1987); *State v. Nordby*, 106 Wn.2d 514, 516, 723 P.2d 1117 (1986).

. . .

In reviewing an exceptional sentence, this court must first determine whether the trial court's reasons are supported by the record. RCW 9.94A.210(4)(a); *McAlpin*, 108 Wn.2d at 462; *Nordby*, 106 Wn.2d at 517. Since this is a factual determination, the trial court's reasons will be upheld unless they are found to be "clearly erroneous." *McAlpin*, 108 Wn.2d at 462; *Nordby*, 106 Wn.2d at 517–18.

(Footnote omitted.) *State v. Tunell*, 51 Wn. App. 274, 277–78, 753 P.2d 543 (1988).[1] Once we determine that there is sufficient evidence in the record to support the trial court's reasons for imposing an exceptional sentence, then we

must independently determine whether, as a matter of law, the trial court's reasons justify an exceptional sentence. RCW 9.94A.210(4)(a); *McAlpin*, 108 Wn.2d at 463; *Nordby*, 106 Wn.2d at 518. The reasons given must take into account factors other than those which are necessarily considered in computing the presumptive range for the offense. *McAlpin*, 108 Wn.2d at 463; *Nordby*, 106 Wn.2d at 518.

---

[1]*See also* RCW 9.94A.210(4), which provides:

"To reverse a sentence which is outside the sentence range, the reviewing court must find: (a) Either that the reasons supplied by the sentencing judge are not supported by the record which was before the judge or that those reasons do not justify a sentence outside the standard range for that offense; or (b) that the sentence imposed was clearly excessive or clearly too lenient."

*Tunell,* at 278. The trial court imposed appellant's exceptional sentence because there were multiple victims of his conduct and appellant's history suggested he posed a future danger to society.

The court found that there were multiple victims of appellant's vehicular homicide. The sentencing reform act defines a victim as "any person who has sustained physical or financial injury to person or property as a direct result of the crime charged." Former RCW 9.94A.030(25). Appellant argues that the three persons injured in the accident were not "victims" under this definition because an essential element of vehicular homicide is "the death of any person". RCW 46.61.520(1).[2] According to appellant's reasoning, the only possible "victim" of vehicular homicide is a deceased party. Appellant's argument is without merit.

■ The SRA requires that the "victim" be injured "as a direct result of the crime charged." Former RCW 9.94A-.030(25). Under appellant's reasoning, there would never be multiple victims because if one qualified as a victim, then the injury would, by that definition, be the basis for a charge. As such, the conduct would already factor into the defendant's offender score as a current offense and could not be used as an aggravating factor. *Tunell,* at 280–81. This court avoids construing statutes in a manner that renders provisions superfluous or meaningless. *Daviscourt v. Peistrup,* 40 Wn. App. 433, 441, 698 P.2d 1093, *review denied,* 104 Wn.2d 1008 (1985). Accordingly, the proper construction of former RCW 9.94A.030(25) is that a "victim" is one whose injuries are proximately caused by conduct forming the basis of the crime charged.[3] In this case,

---

[2]RCW 46.61.520(1) provides: "When the death of any person ensues within three years as a proximate result of injury proximately caused by the driving of any vehicle by any person while under the influence of intoxicating liquor or any drug, as defined by RCW 46.61.502, or by the operation of any vehicle in a reckless manner or with disregard for the safety of others, the person so operating such vehicle is guilty of vehicular homicide."

[3]Appellant justifies his construction of this statute by analogizing to restitution cases which limit restitution to damages causally related to the precise

the three passengers of the Harris automobile were proximately injured by appellant's collision with them while he was intoxicated. That collision and the resulting death of Laurie Myer formed the basis of appellant's conviction for vehicular homicide. Consequently, the three other injured persons were "victims," injured "as a direct result of the crime charged." Former RCW 9.94A.030(25).

The court's finding that there were multiple victims of appellant's vehicular homicide is supported by the record. The existence of multiple victims legally justifies an exceptional sentence. Appellant argues that the court improperly considered the injuries to the three surviving passengers of the Harris car because their injuries could provide the basis for additional charges, possibly assault, even though no charges were filed. The "real facts doctrine" of the SRA prohibits the court "from considering unproven or uncharged crimes as a reason for imposing an exceptional sentence." *State v. McAlpin,* 108 Wn.2d 458, 466, 740 P.2d 824 (1987). Specifically, RCW 9.94A.370(2) provides:

> In determining any sentence, the trial court may rely on no more information than is admitted by the plea agreement, or admitted, acknowledged, or proved in a trial or at the time of sentencing. Acknowledgement includes not objecting to information stated in the presentence reports. Where the defendant disputes material facts, the court must either not consider the fact or grant an evidentiary hearing on the point. The facts shall be deemed proved at the hearing by a preponderance of the evidence. Facts that establish the elements of a more serious crime or additional crimes may not be used to go

charge. *See, e.g., State v. Hartwell,* 38 Wn. App. 135, 141, 684 P.2d 778 (1984). These cases, however, do not support appellant's argument since they allow restitution damages to victims if their injuries are caused by the event forming the basis of the charged crime. *See State v. Steward,* 52 Wn. App. 413, 415–16, 760 P.2d 939 (1988) (restitution justified by sufficient causal connection between crime of taking a motor vehicle without permission and victim's lost property that was in the car and taken by unknown third party after defendant abandoned the car, leaving the keys in the ignition); *State v. Bedker,* 35 Wn. App. 490, 493, 667 P.2d 1113 (1983) (restitution justified by sufficient causal relation between shoddy construction work and defendant's crime of failing to procure bond).

outside the presumptive sentence range except upon stipulation or when specifically provided for in RCW 9.94A.390(2)(c), (d), and (e).[4]

A division of this court has recently noted that the real facts doctrine does not always prevent a sentencing court from considering uncharged behavior:

There are exceptions to the real facts doctrine. Three exceptions are built into the statute itself. The drafters of the sentencing reform act realized that not all factual patterns could be anticipated and there is a general recognition that a common law of sentencing will develop. *See State v. Nordby,* 106 Wn.2d 514, 516, 723 P.2d 1117 (1986); D. Boerner, *Sentencing in Washington* § 9.4, at 9–10 (1985).

Acknowledging this, the courts have carved out additional exceptions, thus permitting acts which could constitute other crimes to be considered as aggravating factors. *State v. Dunaway,* 109 Wn.2d 207, 219, 743 P.2d 1237 (1987) (deliberate cruelty exhibited by defendant for two separate acts of shooting the victim of an attempted murder); *State v. Armstrong,* 106 Wn.2d 547, 550, 723 P.2d 1117 (1986) (multiple incidents of assault treated the same as multiple incidents in a major economic offense, RCW 9.94A.390(2)(c)); *State v. Nordby,* 106 Wn.2d 514, 723 P.2d 1117 (1986) (a more culpable mental state); *State v. Altum,* 47 Wn. App. 495, 735 P.2d 1356 (conduct by defendant and codefendant consisting of repeated acts of criminal assault and sexual assault combined with conduct more heinous than the ordinary crime defined by statute), *review denied,* 108 Wn.2d 1024 (1987).

In all of these cases, facts that constituted elements of more serious or additional crimes were considered as aggravating factors to increase a sentence beyond the

---

[4]These three statutory exceptions to the real facts doctrine—a major economic offense as evidenced by multiple victims or other factors; a serious violation of the Uniform Controlled Substances Act related to trafficking; or the offense is part of pattern of ongoing sexual abuse of a minor—do not apply to the facts of this case. Thus, appellant's exceptional sentence must be analyzed in light of the judicially recognized exceptions to the real facts doctrine. The judicially recognized exceptions were developed because the SRA's enumerated aggravating factors "are illustrative only and are not intended to be exclusive reasons for exceptional sentences." RCW 9.94A.390.

SRA presumptive range. None of the factors was exempted by RCW 9.94A.370(2). We believe that an exception for acts . . . that are designed to subvert or defraud the criminal justice process generally and the proportionality goals of the SRA, specifically, is consistent with the intent of the act.

*State v. Cook,* 52 Wn. App. 416, 420–21, 760 P.2d 964 (1988).

■ Just as the real facts doctrine is not offended when the court considers multiple uncharged incidents in a major economic offense, we hold that multiple victims injured by the conduct forming the basis of a charged crime can provide a legally sufficient basis for an exceptional sentence. The presumptive range of vehicular homicide is based on there being one victim of the charged crime—the decedent. When in reality the conduct forming the basis of the charge creates multiple victims, an exceptional sentence is permissible to ensure that the sentence given is proportional to the offense. We note that in this circumstance, the court is not so much looking at other uncharged crimes as an aggravating factor as it is looking at the consequences of the charged crime. Accordingly, the trial court was correct in determining that there was a multiple victims' aggravating circumstance justifying appellant's sentence. *State v. Armstrong,* 106 Wn.2d 547, 550, 723 P.2d 111 (1986).

The court additionally found that the future danger posed by appellant to society as a result of his disdain for substance abuse treatment, his history of alcohol related misconduct, and his failure to accept responsibility for his behavior also justified his enhanced sentence. Appellant argues that none of these reasons are supported by the record.

The record in this case shows that appellant had been enrolled in numerous substance abuse and psychological rehabilitation programs. In an order deferring prosecution for two counts of simple assault entered November 12, 1985, the court ordered appellant's abstinence from alcohol and his enrollment in an alcohol counseling program. He

was also to continue treatment for posttraumatic stress syndrome disorder (PTSSD), a condition resulting from his experiences as a soldier in the Vietnam war. Appellant's probation officer testified that a motion to show cause why appellant's probation should not be revoked was entered on March 12, 1987, approximately 6 weeks prior to the accident in this case, because appellant had failed to continue with either the alcohol or PTSSD counseling.

Appellant's wife testified that on five or more occasions during the course of their 10-year marriage, which was in the process of dissolution at the time of her testimony, appellant was ordered by the court to undergo treatment for alcohol abuse. To her knowledge, he never sought out treatment. She testified that he never spoke much about the programs and that while enrolled in treatment, he would refrain from drinking, but once the program ended, he would resume drinking. She said his attitude was "[j]ust do it and get it over with." Appellant, on the other hand, introduced evidence that on at least two occasions he referred himself to treatment programs.

■ While there is certainly room for reasonable minds to differ as to whether appellant's treatment failures indicate a "disdain" for treatment, it is difficult to say the trial court's finding was "clearly erroneous," particularly since much of this evidence came into the record via testimony which only the trial court was in a position to assess as to credibility and weight. *See Nordby,* at 516.

In addition, the trial court had before it substantial evidence of appellant's history of alcohol related violations of the law and court orders, including another DWI pending disposition in Cascade District Court at the time the instant case arose.

Appellant correctly argues that it is improper for the court to consider prior offenses to justify an exceptional sentence since they already factor into the criminal defendant's offender score. *See Nordby,* at 518. Moreover, under the real facts doctrine, it is generally improper to consider

"unproven . . . crimes as a reason for imposing an exceptional sentence." *State v. McAlpin*, 108 Wn.2d 458, 466, 740 P.2d 824 (1987); *see also* RCW 9.94A.370(2).

The court here specifically noted that it was considering appellant's prior alcohol related offenses as well as matters currently pending only insofar as they "establish a continuing trend of chemical abuse and dangerous conduct." When a defendant chronically abuses drugs or alcohol, even after significant treatment and counseling, and persistently fails to conform his or her behavior to the law while under the influence of those substances, that defendant poses a significant threat to society of continued criminal activity. Such a record supports a finding of future dangerousness. *State v. Weaver*, 46 Wn. App. 35, 43, 729 P.2d 64 (1986) (driver's long history of chemical abuse and disdain for rehabilitation justify enhanced sentence for protection of public), *review denied*, 107 Wn.2d 1031 (1987). *See also In re George*, 52 Wn. App. 135, 148, 758 P.2d 13 (1988). In *George*, the petitioner had refused to continue treatment for sexual psychopathy and had an extensive history of sex abuse crimes.

> The court correctly reasoned that if petitioner were untreatable, then he posed a threat to the community beyond that which could be ameliorated by incarceration for a period conforming to the standard range. Thus, an exceptional sentence was justified to isolate petitioner from the community thereby preventing him from continuing to perpetrate his chronic criminal behavior.

*George*, at 148. Similarly, we find that the trial court properly concluded, based on appellant's prior and pending alcohol related misconduct, that appellant's failure to respond successfully to treatment for alcohol abuse supports a finding of future dangerousness.

Appellant wrote several postplea letters to the court in which he offered explanations for his behavior. Primarily, he contended that the Veterans Administration's response to his various needs was inadequate. The court's rejection

of the explanations in appellant's letters was well within its discretion.

■ Appellant also argues that the court used these letters to determine that he had failed to accept responsibility for his behavior and that the court used this alleged failure as a justification for his exceptional sentence. We do not have to reach the question of whether failure to accept responsibility for one's behavior alone will justify an exceptional sentence. Here, the court clearly based its sentence on its finding that appellant's alcohol related misconduct would in all probability continue in the future. Where a finding, as is this finding, is so clearly supported by the record, the fact that the court may have considered other possibly improper matters in reaching the finding is no basis for reversal if the trial court would have reached the same result had it not considered the other matters. *State v. Tunell,* 51 Wn. App. 274, 284, 753 P.2d 543 (1988). In summary, the court's finding that at the time of sentencing appellant posed a future threat to society was not "clearly erroneous." *Nordby,* at 516.

■ Finally, we turn to whether the trial court erred in concluding that future dangerousness is an acceptable justification for imposing appellant's exceptional sentence. Under the SRA, one of the purposes of criminal sentencing is to "protect the public." RCW 9.94A.010(4). Under the circumstances established here, future dangerousness is an acceptable rationale for enhancing appellant's sentence. *See George,* at 148.

Appellant argues that his "disdain for treatment" cannot justify an exceptional sentence because it is impermissible under the SRA to invoke a criminal's need for rehabilitation to enhance a sentence. It is true that rehabilitation is an improper rationale for an enhanced sentence under the SRA. *In re Rolston,* 46 Wn. App. 622, 626, 732 P.2d 166 (1987). If the court's rationale here had been merely that appellant needed rehabilitation, the justification would have been improper. *See George,* at 148. In *George,* the criminal defendant had been sentenced prior to the SRA.

There, this court found that his refusal to continue treatment for sexual psychopathy justified an exceptional sentence on dual bases—insufficient rehabilitation, an acceptable rationale in pre–SRA cases, and future dangerousness, as evidenced by his refusal. *George,* at 148. There is no indication here that the trial court believed extended incarceration would rehabilitate appellant. Instead, the court properly concluded that his disdain for treatment indicated future dangerousness which required incarceration beyond the standard range in order to protect the public. *In re George,* 52 Wn. App. 135, 148, 758 P.2d 13 (1988).

Finally, appellant argues that the court's rationale for its sentence was in reality a pretext to punish him for not being "reformed." It is clear, however, from the court's findings that the rationale for appellant's enhanced sentence was based not on his failure to reform, but on the significant future danger he poses to society.

The trial court did not err in justifying appellant's enhanced sentence on the bases of his future dangerousness and that his conduct caused injuries to multiple victims.

The judgment of the trial court is affirmed.

WEBSTER and WINSOR, JJ., concur.

Review denied at 112 Wn.2d 1015 (1989).