**STATE**

**v.**

**Thomas WISEHART.**

**No. 89–27–C.A.**

Supreme Court of Rhode Island.

Feb. 1, 1990.

James E. O'Neil, Atty. Gen., Jeffrey J. Greer, Asst. Atty. Gen., Annie Goldberg, and Michael J. O'Connor, Sp. Asst. Attys. Gen., for plaintiff.

Richard Casparian, Public Defender and Barbara Hurst, Asst. Public Defender, for defendant.

FAY, Chief Justice.

This case is before us on an appeal by the defendant, Thomas Wisehart (Wisehart), from a Superior Court denial of his motion to correct an illegal sentence. We affirm.

The facts relevant to this appeal are as follows. On October 6, 1975, a grand jury handed down indictment No. W2/75–163

charging defendant with one count of possession of a controlled substance and one count of delivery of a controlled substance. On December 1, 1975, defendant pleaded nolo contendere to both counts. The trial court imposed a one-year suspended sentence with five years' probation for the possession charge and a deferred sentence for the charge of delivery.[1] In September 1983 the Westerly police arrested defendant for assault with intent to murder and other related charges. The arrest precipitated a hearing on defendant's violation of probation and the conditions of his deferred sentence. The defendant was adjudged a violator on December 5, 1983, and the trial justice sentenced him to ten years at the Adult Correctional Institutions (ACI). The defendant's subsequent motion to reduce or correct this sentence was denied on October 17, 1988.

Although this appeal revolves around the original offense and the subsequent imposition of the ten-year sentence, the pertinence of the following additional facts will become clear later in this opinion. The record in this case indicates that defendant has a very extensive criminal history. The trial justice noted this fact in the 1983 violation hearing, stating:

"You want to look at his record? 1958, breaking and entering, larceny, three years probation; 4–23–69, possession of marijuana, ninety days suspended, one year probation, $50 fine; 1969, August, assault, dismissed; 1969, unlawful possession of a firearm, and that matter was carried on and he ultimately got one year at the House of Corrections, suspended, three years probation; on 10–22–71, carrying a weapon in a motor vehicle, assault and battery; assault and battery in '72, larceny, armed robbery, and evidently he was an accessory after the fact of robbery, one year suspended, three years probation; '73, assault with a dangerous weapon; 1973, operating with improper licenses, series of disorderly operation, $10, $15, and costs—I'm not even looking at those; and there's a series of those; 1975, April 11th, possession of marijuana, attempted larceny, five months at the A.C.I. suspended, one year probation; 5–23–75, leaving the scene of an accident, six months unsupervised probation; 1975—now we get into possession—one year suspended, five years probation, possession of a controlled substance; and delivery of a controlled substance, deferred sentence. * * * [A]nd sale of a drug, six months unsupervised probation, possession of marijuana, ninety days suspended—that's New London; receiving stolen goods, two years suspended, two years probation. He received more suspended and probationary periods. He ended up serving some time in the federal prison, which really reactivated his entire probationary, deferred sentence. And entering a building, one year at the A.C.I. He's had a series of charges."

Finally in 1983 defendant was charged with the offense that precipitated the imposition of his deferred sentence: assault with intent to murder. The defendant contends that it is the seriousness of this charge and his criminal history, rather than the nature of the charge upon which the sentence was deferred, that resulted in a ten-year prison sentence to the ACI. In support of his contention defendant points to the benchmarks promulgated by the Sentencing Study Committee in 1981 suggesting two to three years' imprisonment for the delivery of a small amount of a controlled substance. *See* Sentencing Study Committee, Rhode Island Supreme Court, Report of the Sentencing Study Committee (January 1981), Appendix D, Benchmark No. 22. The benchmarks, coupled with our holdings in *State v. Fortes*, 114 R.I. 161, 330 A.2d 404 (1975), and *State v. Pires*, 525 A.2d 1313 (R.I.1987), mandate that a trial justice, considering the violation of a deferred sentence, must focus primarily upon the original offense and not, defendant asserts, upon the violating offense or criminal record of a defendant. Without invalidat-

---

1. At the time of the offense a charge of delivery of a controlled substance carried a potential sentence of thirty years' imprisonment. General Laws 1956 (1968 Reenactment) § 21–28–4.01(A)(2)(a), as enacted by P.L.1974, ch. 183, § 2.

ing our holdings in *Fortes* and *Pires*—or the benchmarks promulgated by the sentencing committee—we disagree with defendant's assertions.

I

It is a well-settled principle of Rhode Island law that the sentencing of a criminal defendant is a discretionary matter for the trial justice. G.L.1956 (1981 Reenactment) § 12–19–2. Although this statutory authority does not specifically provide for appellate review, we have held that this court may review the imposition of a criminal sentence otherwise within the statutory maximum. *Fortes*, 114 R.I. at 173, 330 A.2d at 411. However, it is in the rarest of circumstances that we shall exercise the power to set aside a sentence. "[O]nly when the record points convincingly to the conclusion that the sentencing justice has without justification imposed a sentence which is grossly disparate from sentences generally imposed for similar offenses" shall we remand for a more appropriate sentence. *Id.*

In *Fortes* we were similarly asked to consider the propriety of the penalty imposed for violating the terms of a deferred sentence. The defendant in that case, a first offender, received a deferred sentence in 1969 on a charge of possession of marijuana. *Id.* at 162, 330 A.2d at 406. In 1972 he was brought before the court as a violator of his deferred sentence. *Id.* at 163, 330 A.2d at 406. The precipitating offense was assault with intent to murder, and the defendant was sentenced on his deferred sentence to fifteen years in the ACI. *Id.* at 163–64, 330 A.2d at 406. In reversing the fifteen-year prison sentence as excessive, this court asserted that a violation hearing is "not held for the purpose of punishing defendant for the new offense. Although the latter is the precipitating cause for the revocation hearing, it should play no part in determining the extent of the penalty to be imposed on the charge on which sentence had formerly been deferred. Punishment for the new offense must await the disposi-

tion of the case in which the new offense is charged." *Id.* at 174, 330 A.2d at 412.

More than ten years later we had occasion to reaffirm the tenets of the *Fortes* holding in the context of a probation-revocation proceeding. *State v. Pires*, 525 A.2d 1313 (R.I.1987). In *Pires*, however, we went on to curtail the somewhat restrictive *Fortes* decision by stating that "[w]e have never held that the trial justice must completely ignore the nature of the second offense when imposing a sentence for a probation violation. However, we have held that the trial justice should be guided principally by consideration of the nature of the first offense." 525 A.2d at 1314. Thus a trial justice is not completely precluded from consideration of the violating offense when imposing the penalty on a deferred sentence.

■ Once again we are asked to address the propriety of a penalty imposed upon a violator of a deferred sentence. The defendant herein contends that the trial justice in the 1983 violation hearing, as well as in ruling on the motion for correction of an illegal sentence, failed to abide by the principles enunciated in our *Fortes* and *Pires* decisions.[2] After careful consideration of the precedent established by these two decisions, however, we find them to be easily distinguishable. We do not have a first offender before us today. The defendant has had an ongoing relationship with law enforcement dating back to 1968. The deferred sentence was not imposed upon an individual who was before the court on an isolated incident as were the defendants in both *Fortes* and *Pires*. Therefore, the holdings in those decisions are inapplicable to this case. It would be unduly restrictive to require a trial justice to ignore the criminal record of a defendant before the court when considering the penalty to impose when acting on a violation of a deferred sentence. Although we are not overruling the tenets of *Fortes* and *Pires*, we do find that their reasoning is limited to situations involving first offenders when the sentence

---

**2.** We acknowledge that *State v. Pires*, 525 A.2d 1313 (R.I.1987), had not yet been rendered prior to the 1983 violation hearing. However, the trial justice noted this decision in the later 1988 hearing for the motion to correct the sentence.

imposed is clearly excessive. A more realistic approach in situations such as the one before us is to allow the trial justice to consider the totality of the circumstances before the court, including the existing record of the defendant as it relates to his/her amenability to rehabilitation.

A number of other jurisdictions employ a "totality of the circumstances" approach and its rationale in the context of probation revocation hearings and the subsequent imposition of a sentence. *See Moya v. State,* 769 P.2d 447, 448 (Alaska Ct.App.1989) (totality of defendant's conduct); *People v. Smith,* 143 Mich.App. 782, 784, 372 N.W.2d 660, 661 (1985) (special circumstances); *In re George,* 52 Wash.App. 135, 146–50, 758 P.2d 13, 19–21 (1988) (considered future dangerousness, amenability to treatment, nature of crime); *cf. People v. Hollingsworth,* 93 Ill.App.3d 416, 418–19, 48 Ill.Dec. 773, 775, 417 N.E.2d 175, 177 (1981) (cannot sentence defendant upon conduct leading to probation revocation but may consider it as reflects upon rehabilitation potential). Such an approach comports with the discretionary power vested in the trial justice in the sentencing of criminal defendants.

■ In light of the foregoing, the sentence imposed in defendant's 1983 violation hearing was not clearly excessive. The trial justice did not base the sentence upon the violating conduct; rather, he gave careful consideration to defendant's record and all relevant circumstances. The trial justice specifically stated:

> "I certainly do not sentence [defendant] on the new charge that's violated him, but I certainly must look at the fact that in the meantime he got charged with breaking and entering and was convicted of it, that he has other cases that he was before the Court on and he got further probation periods on a six month sentence to the federal installation, taking into consideration other drugs that he sold in the 4th Division, which were misdemeanors, which were just delivery \* \* \*.
>
> "The Court takes into consideration the entire background of the defendant, and really, when you look at it, he's had a horrible, horrible experience with the law, and I'm going to take all of those factors into consideration."

The consideration of these factors by the trial justice was proper, and the resulting sentence was not clearly excessive.

## II

■ The defendant also contends that his sentence was illegal because it is far in excess of the benchmarks established by the Sentencing Study Committee in 1981. The suggested sentence for delivery of a small amount of a controlled substance is two to three years' imprisonment. The benchmarks, promulgated for the purpose of establishing a consistent set of guidelines in sentencing, are "based on the assumption that the defendant has no criminal history." Sentencing Study Committee, Rhode Island Supreme Court, Report of the Sentencing Study Committee (January 1981), Appendix C, No. 3. Furthermore, the trial justice may depart from these guidelines when "substantial and compelling circumstances" are present. *Id.,* Appendix C, No. 1. These "substantial and compelling circumstances" include such factors as a defendant's criminal record, a defendant's attitude toward society, and a defendant's attitude about the crime, that is, remorse or repentance. *Id.,* Appendix D, Notes.

■ It is clear that the benchmarks are intended only as a guide and that the trial justice is certainly not bound by them. Under the circumstances the deviation from the benchmarks was justified. The defendant was not a first offender when he was before the court on the original sentence, and the trial court properly considered his criminal record. Additionally the trial justice was not in error in considering the defendant's intervening conduct. The deferred sentence is imposed as a matter of leniency in order to give a defendant a second chance. How a defendant responds to this opportunity is a factor the court should consider in sentencing. The defendant here failed to use his chance productively and instead used his freedom to engage in additional acts of criminality. As we stated in *State v. Gordon,* 539 A.2d 528,

530 (R.I.1988), "In formulating a fair sentence, the trial justice bears the affirmative duty to treat each defendant separately, focusing on the individual's unique background and character. * * * He should consider the gravity of the crime, the possibilities for defendant's rehabilitation, deterrence to others, and the appropriateness of the punishment for the crime." We find that the trial justice did just this, the sentence imposed was justified, and the defendant's subsequent motion to correct his sentence was properly denied.

For the reasons stated, the defendant's appeal is denied and dismissed and the judgment of the Superior Court is affirmed.