[No. 12546-3-II.   Division Two.   November 5, 1990.]

THE STATE OF WASHINGTON, *Respondent*, v. NICK L. CAMPAS, *Appellant*.

*Raymond H. Thoenig* of *Department of Assigned Counsel,* for appellant.

*John W. Ladenburg, Prosecuting Attorney,* and *Chris Quinn–Brintnall, Deputy,* for respondent.

REED, J.*—Defendant Nick Campas appeals his conviction for felony murder in the first degree, contending that the trial court erred in failing to instruct the jury on manslaughter and in imposing an exceptional sentence.

Defendant met Thomas Huffman and the victim, Linda Thomas, for the first time on the evening of May 13, 1988, at the Pee Wee Tavern in Tacoma, Washington. They talked and drank until the bar closed at 2 a.m., after which they went to Thomas' home. They continued to drink beer and converse until 5 a.m.

Defendant and Huffman left, leaving Thomas reclining on the couch, where she had been sitting. As the pair were leaving, defendant stated that he wanted to go back in briefly and speak to Thomas. Huffman went to his car and waited.

Defendant reentered the home and attacked Thomas, beating her severely and stabbing her repeatedly about the face and chest. He eventually appeared at the door and motioned for Huffman to come in. When Huffman reentered the home, defendant told him, "She's dead, and you're implicated." He directed Huffman to take the victim's purse and to search for valuable items. Huffman went into the living room, where he found the victim lying on the couch, moaning and covered with blood. He ran out of the house and drove to a nearby store, where he telephoned for emergency assistance. Despite medical aid, Thomas died the next day.

Defendant was arrested while driving the victim's car and in possession of articles of her property. He was charged with first degree murder committed during a robbery in the first degree. At trial, the court refused to give defendant's

---

*Judge Edward P. Reed was a member of the Court of Appeals at the time oral argument was heard on this matter. He is now serving as a judge pro tempore of the Court pursuant to CAR 21(c).

proposed instruction that manslaughter in the first degree is a lesser included offense of the crime charged. Defendant was convicted as charged. His presumptive sentence range was 240 to 320 months, with a maximum of life. The sentencing court imposed an exceptional sentence of 480 months.

■ First degree manslaughter is not a lesser included offense of felony murder. *State v. Frazier,* 99 Wn.2d 180, 191–92, 661 P.2d 126 (1983). Defendant contends that the classifications of homicide set out in RCW 9A.32.010 make first degree manslaughter a lesser degree of felony murder. The argument is novel but unpersuasive.

■ Defendant next contends that the trial court's findings in support of his exceptional sentence are not supported by the record. RCW 9.94A.210(4). The findings will be upheld on appeal unless clearly erroneous. *State v. Nordby,* 106 Wn.2d 514, 517–18, 723 P.2d 1117 (1986); *State v. McAlpin,* 108 Wn.2d 458, 462, 740 P.2d 824 (1987). The challenged findings are: that the defendant presents a serious danger to the community; that he invaded the victim's zone of privacy; that the killing was done in an especially cruel manner; that defendant violated a trust relationship; and that the victim was particularly vulnerable and unable to resist.

### FUTURE DANGEROUSNESS

Defendant contends that the factual finding of dangerousness was predicated solely on the facts of the current offense and that the record is insufficient to support the finding. We disagree.

■ A court may not impose an exceptional sentence based on predicted future dangerousness when that determination is not supported by a history of similar acts or other corroborating evidence. *State v. Holyoak,* 49 Wn. App. 691, 696, 745 P.2d 515 (1987), *review denied,* 110 Wn.2d 1007 (1988). The testimony of psychologists or psychiatrists may contain corroborating evidence to support a

finding of dangerousness. *State v. Holyoak, supra; State v. Shephard*, 53 Wn. App. 194, 766 P.2d 467 (1988).

Here, the record establishes that defendant has a brain disorder as a result of long–term poly drug use and his history of severe epileptic seizures. Dr. Lloyd Irvin Cripe testified that there are significant problems with the way defendant's brain works. Both Dr. Cripe and Dr. Brett Trowbridge testified that the defendant does not have a severe psychiatric disorder that would prevent him from formulating the requisite mental intent to commit the crimes charged.

Defendant has been in several treatment programs for chemical dependency, yet he has failed to complete any of them successfully. He continued to use controlled substances, often mixing and injecting them. He injected two "speedballs" on the day of the killing, that being a combination of cocaine and heroin. He also smoked a PCP–laced marijuana cigarette while en route to the victim's home. PCP is a drug that, with chronic abuse, induces psychosis and violent behavior, tending to result in organic cognitive problems which may not begin to clear for 6 to 12 months. Dr. Cripe opined that the defendant was a chronic user of PCP. Dr. Cripe further stated that the defendant's ability to think in terms of morality would be greatly impaired by the extent of his drug use on the day of the killing. Dr. Trowbridge concluded that defendant is a highly unpredictable individual with a deteriorating condition.

While drug use, alone, may not be sufficient to support a finding of dangerousness, the facts of this case show that the defendant's violent criminal behavior was related to his drug use, that he knew he had a severe drug problem, that he was unable or unwilling to complete treatment for that problem, that his drug use can lead to uncontrolled behavior, and that his condition is deteriorating. These facts constitute sufficient evidence to support the trial court's determination that defendant poses a serious danger to the community. *State v. Davis*, 53 Wn. App. 306, 766

P.2d 1120, *review denied,* 112 Wn.2d 1015 (1989); *In re George,* 52 Wn. App. 135, 758 P.2d 13 (1988).

### CRUELTY

██ Defendant contends that all murders in the first degree are inherently cruel and that the present finding of cruelty cannot, therefore, be used to justify the imposition of an exceptional sentence. Defendant cites no authority for the proposition that all first degree murders are inherently cruel. The position is unsupportable and was rejected in *State v. Drummer,* 54 Wn. App. 751, 759, 775 P.2d 981 (1989). An exceptional sentence is justified when a defendant's conduct during the commission of a crime manifests deliberate cruelty to the victim. RCW 9.94A.390. The record here supports the finding that defendant killed Thomas in a deliberately cruel manner by repeated bludgeoning and stabbing, which left her barely alive but in pain and agony until she died.

### VULNERABILITY

We agree with defendant's contention that there was no evidence that Thomas was particularly vulnerable as a result of any of the reasons set out by RCW 9.94A-.390(2)(b), which reads as follows:

> The defendant knew or should have known that the victim of the current offense was particularly vulnerable or incapable of resistance due to extreme youth, advanced age, disability, or ill health.

### ABUSE OF TRUST

The defendant further contends that the evidence was insufficient to support the conclusion that a trust relationship had developed between himself and Thomas. We agree. The abuse of trust factor is found in RCW 9.94A-.390(2)(c)(iv), which states: "The defendant used his or her position of trust, confidence, or fiduciary responsibility to facilitate the commission of the current offense." We have held that mere acquaintanceship, with the physical presence or nearness associated therewith, is not of sufficient stature to constitute the type of trust envisioned by the

Legislature. *See State v. Stuhr,* 58 Wn. App. 660, 663, 794 P.2d 1297 (1990), where we said:

> If we were to conclude that this tenuous, transient relationship [house guest] equates with enjoying a position of trust and confidence, it is difficult to say where the line could be drawn. Any relationship that provides an opportunity for the commission of this type of crime could not be excluded.

So far as the evidence shows, the victim did not readmit defendant or even know of his presence. Rather, from the nature of the wounds, a fair inference is that defendant caught her by surprise and attacked her from the rear while she reclined on the couch. Given the circumstances, the finding of an abuse of trust was clearly erroneous.[1]

Finally, we note that the defendant did not assign error to the finding or the conclusion that he failed to exhibit any remorse for the killing. Findings not challenged are verities on appeal. *State v. Niedergang,* 43 Wn. App. 656, 658, 719 P.2d 576 (1986).

Lack of remorse has been upheld as a reason justifying the imposition of an exceptional sentence. *Stuhr,* 58 Wn. App. at 664; *State v. Tunell,* 51 Wn. App. 274, 753 P.2d 543 (failure to acknowledge the severity of the offenses), *review denied,* 110 Wn.2d 1036 (1988); *State v. Davis, supra* (general disregard for the danger the defendant causes). While that factor is not expressly set out in RCW 9.94A.390(2), the list is illustrative only and permits a trial court to individualize sentencing, based on the facts of a particular case. RCW 9.94A.390; *State v. Bernhard,* 108 Wn.2d 527, 541–42, 741 P.2d 1 (1987), *overruled on other grounds in State v. Shove,* 113 Wn.2d 83, 776 P.2d 132 (1989).

Where the sentencing judge has given both proper and improper grounds for imposing an exceptional sentence, this court may affirm rather than remand when it is

---

[1] *State v. Handley,* 115 Wn.2d 275, 796 P.2d 1266 (1990) cites *State v. Davis,* 47 Wn. App. 91, 95, 734 P.2d 500, *review denied,* 108 Wn.2d 1029 (1987), but neglects to mention, as we did in *State v. Stuhr, supra,* that the issue was not argued or addressed directly in *Davis. See* 47 Wn. App. at 95–96.

satisfied that the trial court would have imposed the same sentence absent the improper factor. *Drummer,* 54 Wn. App. at 760. Because ample reasons exist to support the sentence imposed, we need not discuss the court's finding of an invasion of the victim's zone of privacy. Although some case law supports the existence of such a factor, *see, e.g., State v. Hernandez,* 54 Wn. App. 323, 327, 773 P.2d 857 (1989), *review granted sub nom. State v. Batista,* 113 Wn.2d 1035 (1990); *State v. Falling,* 50 Wn. App. 47, 747 P.2d 1119 (1987); *State v. Ratliff,* 46 Wn. App. 466, 731 P.2d 1114 (1987), our Supreme Court has yet to recognize such a justification for an exceptional sentence. Because of its susceptibility to almost limitless application, we have serious doubts regarding this factor. *Cf. Drummer,* 54 Wn. App. at 758–59 (that murder occurred in victim's home not an aggravating factor).

The defendant's exceptional sentence is affirmed.

ALEXANDER, C.J., and WORSWICK, J., concur.