[No. 18598–5–I.   Division One.   October 12, 1987.]

THE STATE OF WASHINGTON, *Respondent,* v. DANIEL GILL JOHNSON, *Appellant.*

*Julie A. Kesler* of *Washington Appellate Defender Association,* for appellant.

*Norm Maleng, Prosecuting Attorney,* and *Michael Danko, Deputy,* for respondent.

PEKELIS, J.—Daniel Gill Johnson appeals his conviction on four counts of second degree robbery. He argues that the trial court erred in (1) refusing to suppress evidence of pre-trial photographic identification, as well as in–court identification; (2) limiting expert testimony on eyewitness identification; and (3) refusing to give certain jury instructions on eyewitness identification.

I

Between April 23 and April 26, 1985, a series of four robberies was committed at business establishments in the Seattle area. In each instance, the robber wore what was described as a tan or brown jacket made of corduroy or suede with reddish stains on the front and an attached hood. The robber wore the hood over his head and carried what appeared to be a gun concealed in his pocket. He was variously described by the victims as "a male Caucasian with an olive complexion," "a white male or a light–skinned black," and a "mulatto."

Based on the descriptions provided by the victims, as well as other information contained in the records of the Seattle Police Department, Detective Henry VanderLaan compiled a photographic montage in which appellant Johnson's photograph appeared along with those of five other individuals. On April 26, VanderLaan showed the montage to one of the robbery victims, who selected the photograph of Johnson. Later, the montage was shown to the other three victims, at least two of whom independently selected Johnson's photograph.[1]

On May 7, Johnson was charged by amended information

---

[1]The remaining victim did not testify as to which photograph she selected because the detective who showed her the montage was not present at trial to provide the necessary foundation testimony.

with four counts of robbery in the second degree. Before trial, he moved to suppress evidence of pretrial photographic identification, as well as in–court identification. Johnson argued that the photographic montage was impermissibly suggestive because he was the only individual appearing therein who was similar in appearance to the suspect described by the victims. The trial court denied the motion, finding that the montage was not impermissibly suggestive. At trial, all four victims identified Johnson as the robber, and three of the four testified that they had selected Johnson's photograph from the montage. The State also offered a jacket found at Johnson's apartment which, according to one of the victims, looked like the jacket the robber wore. In addition, the State, as well as the defendant, ran a videotape taken during one of the robberies in which the robber and the victim appeared together for approximately 54 seconds.

Johnson sought to introduce the expert testimony of Dr. Edith Green, a psychologist, on the subject of eyewitness identification. Johnson proposed to have Dr. Green testify generally about human memory, and more specifically about certain misconceptions people have about memory. One of those misconceptions, according to Dr. Green, pertains to the effect of stress, which, contrary to popular belief, tends to affect memory adversely. Dr. Green would also have testified about "weapon focus,"[2] about the "confidence factor",[3] and about the tendency of people under stress to overestimate time. Finally, Dr. Green would have testified about the suggestiveness of various photographic identification procedures.

The trial court found that most of Dr. Green's proposed

---

[2]"Weapon focus" is a phenomenon whereby persons who focus their attention on a weapon have difficulty taking in other visual stimuli.

[3]The "confidence factor" refers to the degree of confidence an eyewitness has in the correctness of the identification. According to Dr. Green, about half the studies suggest that an eyewitness who is confident is more likely to be correct, while the other half suggest exactly the opposite.

testimony was within the "common experience" of the jurors, and that the studies pertaining to the confidence factor were not "persuasive" since they had reached contrary results. Consequently, the court limited Dr. Green's testimony to the effects of stress on memory, since one of the robbery victims, a pharmacist, had testified that in his opinion stress enhanced memory.

Johnson proposed three special jury instructions pertaining to eyewitness identification, all of which the court refused. However, the trial court did instruct the jury that it could take into account the witnesses' memories and opportunities to observe, as well as other factors, in determining what weight should be given to their testimony. *See* WPIC 6.01. The jury was also given the customary instruction on proof beyond a reasonable doubt. *See* WPIC 4.01. Johnson was found guilty as charged on all four counts, and judgment was entered accordingly. He brings this timely appeal.

## II

Johnson first contends that the photographic montage was impermissibly suggestive because he was the only individual appearing therein who bore a reasonable resemblance to the suspect as described by the four victims. Therefore, he argues, both the out-of-court photographic identifications and the in-court identifications should have been suppressed.

An out-of-court identification is inadmissible if the identification procedure was so "'impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification.'" *State v. Cook,* 31 Wn. App. 165, 171, 639 P.2d 863 (quoting *Simmons v. United States,* 390 U.S. 377, 384, 19 L. Ed. 2d 1247, 88 S. Ct. 967 (1968)), *review denied,* 97 Wn.2d 1018 (1982). A photographic montage may be suggestive if the only photograph in the montage resembling the criminal is that of the defendant. *State v. Hilliard,* 89 Wn.2d 430, 439, 573 P.2d 22 (1977); *see also State v. Traweek,* 43 Wn. App. 99, 103, 715 P.2d 1148,

*review denied,* 106 Wn.2d 1007 (1986). However, even if an identification procedure is found to be suggestive, suppression is not required unless the suggestiveness results in a very substantial likelihood of misidentification. *Cook,* 31 Wn. App. at 171–72. The court must balance the corrupting effect of the suggestive identification procedure against those factors indicative of reliability. *Manson v. Brathwaite,* 432 U.S. 98, 114, 53 L. Ed. 2d 140, 97 S. Ct. 2243 (1977); *Cook,* 31 Wn. App. at 172; *State v. Burrell,* 28 Wn. App. 606, 610, 625 P.2d 726 (1981).

We first consider whether the identification procedure was suggestive, since if it was not, our inquiry is at an end. *Cook,* 31 Wn. App. at 171; *see also State v. Vaughn,* 101 Wn.2d 604, 607–11, 682 P.2d 878 (1984); *State v. Weddel,* 29 Wn. App. 461, 475, 629 P.2d 912, *review denied,* 96 Wn.2d 1009 (1981). The six individuals depicted in the photographic montage exhibit a variety of racial characteristics. Johnson's primary contention is that he is the only one of the six who can reasonably be characterized as "mulatto." However, the eyewitnesses described the robber's racial characteristics in a variety of terms, indicating in general that he was either a light–skinned black or a dark–skinned Caucasian. We have independently examined the montage, and we find that all the individuals depicted therein are within the range of people so described. We agree with the trial court that the montage does not impermissibly suggest the defendant. Consequently, both the out–of–court photographic identifications and the in–court identifications were admissible.

### III

Johnson next contends that the court erred in limiting the expert testimony of Dr. Green. The admission of expert testimony is governed by ER 702, which provides:

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or edu-

cation, may testify thereto in the form of an opinion or otherwise.

In determining whether to admit expert testimony under ER 702, the court should consider (1) whether the witness is qualified as an expert, (2) whether the opinion is based on an explanatory theory generally accepted in the scientific community, and (3) whether the testimony would be helpful to the trier of fact. *State v. Allery,* 101 Wn.2d 591, 596, 682 P.2d 312 (1984). The admission or exclusion of opinion testimony is within the discretion of the trial court. *State v. Guloy,* 104 Wn.2d 412, 429, 705 P.2d 1182 (1985), *cert. denied,* 475 U.S. 1020, 89 L. Ed. 2d 321, 106 S. Ct. 1208 (1986).

In *State v. Moon,* 45 Wn. App. 692, 726 P.2d 1263 (1986), this court took note of the growing number of cases finding the exclusion of expert testimony on eyewitness identification to be an abuse of discretion in "a very narrow range of cases". *Moon,* 45 Wn. App. at 697 (citing *State v. Chapple,* 135 Ariz. 281, 660 P.2d 1208 (1983)). We characterized those cases by the following three factors: (1) the identification of the defendant is the principal issue at trial, (2) the defendant presents an alibi defense, and (3) there is little or no other evidence linking the defendant to the crime. *Moon,* 45 Wn. App. at 697. Arguably, those factors are all present in this case. First, the identification of the defendant was clearly the principal issue at trial. Second, Johnson testified that he was at his mother's home when the robberies were committed, although there was no evidence to corroborate this.[4] Third, while there was some other evidence linking Johnson to the crimes, that evidence was not particularly strong. One of the victims testified that the jacket seized during a search of Johnson's home looked like the one worn by the robber, while another victim testi-

---

[4]Admittedly, it is difficult to see how the presentation of an alibi defense bears on this issue. We doubt that the absence of an alibi defense should by itself exclude a case from the narrow range of cases that require the admission of properly offered eyewitness testimony.

fied that it did not appear to be the same jacket.[5]

However, *Moon* should not be read as establishing that it is error to exclude any and all proffered expert testimony on eyewitness identification in every case where the above three factors are present. Besides the three factors mentioned above, our decision in *Moon* was based on (1) the reasons given by the trial judge for excluding the expert testimony, and (2) the particular facts of the case. The case before us is distinguishable from *Moon* in both respects.

First, the trial court's reasons for excluding Dr. Green's testimony distinguish this case from *Moon*. In *Moon*, the trial court did not dispute that the proposed testimony was based on a generally accepted scientific theory. Nor did the court reject the defendant's contention that the proposed testimony would be helpful to the trier of fact. *Moon*, 45 Wn. App. at 698. Rather, the court feared that the use of such testimony would "invade the province of the jury" by telling it whether to believe the eyewitness. *Moon*, 45 Wn. App. at 698. However, as this court observed in *Moon*, 45 Wn. App. at 698, such a fear is unfounded. Opinion testimony is not objectionable merely because it embraces an ultimate issue to be decided by the trier of fact. ER 704. Thus, the trial court in *Moon* erred in excluding the expert testimony because it failed to exercise its discretion on tenable grounds.

In contrast, the trial court in this case analyzed each part of the proposed testimony in terms of the requirements for admission under ER 702. The court admitted that portion of Dr. Green's testimony which pertained to the effects of stress on memory, since one of the State's witnesses had previously expressed an opinion on that issue. However, the court excluded testimony pertaining to the confidence

---

[5]The only other evidence which might have linked Johnson to the crimes was the videotape taken during one of the robberies. Although we have viewed the videotape, we have not seen the defendant in person, so we are unable to say whether or to what degree the videotape might have aided the jury in identifying Johnson as the robber.

factor because, in the court's view, that testimony was not "persuasive" since it was based on studies which had reached contradictory conclusions.[6] The court excluded the remainder of Dr. Green's proposed testimony, including those portions pertaining to weapon focus and photographic identification procedures, finding that it would not be helpful to the trier of fact because it was within the "common experience" of the jurors. *See Allery,* 101 Wn.2d at 596.

As noted in *Chapple,* 660 P.2d at 1220, excluding expert testimony on eyewitness identification for the reason that it would not be helpful to the trier of fact is a proper exercise of the trial court's discretion "in the great majority of cases". However, as we implied in *Moon,* the exclusion of such testimony even on what in most cases would be tenable grounds may be reversible error in a few exceptional cases.[7] *See, e.g., State v. Chapple,* 135 Ariz. 281, 660 P.2d 1208 (1983); *People v. McDonald,* 37 Cal. 3d 351, 690 P.2d 709, 208 Cal. Rptr. 236 (1984). These cases will involve more than the three factors identified in *Moon;* they will involve fact patterns which are close and confusing,[8] and

---

[6]Since the record demonstrates little testimony or comment on the subject of the eyewitnesses' degree of confidence in their identification, the exclusion of expert testimony on this subject was proper under ER 401 (relevance) or ER 403 (considerations of undue delay, waste of time).

We note, however, that where the State makes much of its eyewitnesses' high level of certainty, testimony such as that offered by Dr. Green might have probative value. She proposed to tell the jury that from these conflicting studies on the relationship between confidence and accuracy, the "consensus" in the "scientific community is that confidence should *not* be used as an indication of accuracy." In cases where confidence plays a significant role, such testimony could be of help to a jury in evaluating the evidence.

[7]We did not reach this precise issue in *Moon* because there the trial court's reasons were clearly untenable.

[8]In *Chapple,* 660 P.2d at 1221, 1223, for example, the court emphasized the "unusual" facts which led it to conclude that the trial court had abused its discretion in refusing to admit expert testimony on eyewitness identification.

which "cry out" for an explanation[9] which the proposed testimony provides. In other words, there must be serious contradictions in the eyewitness testimony, as well as a proper "fit" between those contradictions and the proposed expert testimony. *See Moon,* 45 Wn. App. at 699.

None of these considerations is present in this case. While in *Moon* there was but a single eyewitness who had only a "brief look" at the robber, here there were four different eyewitnesses who were able to view the robber for much longer periods.[10] Furthermore, there is no significant discrepancy in this case, as there was in *Moon,* between the victims' initial descriptions of the robber and the defendant's actual appearance. Finally, there is nothing comparable in this case to the "complicated background" of *Chapple,* which included numerous photographic lineups, multiple exposures of the witnesses to the defendant's photograph, and a close resemblance between the defendant and another suspect. *See Chapple,* 660 P.2d at 1217–18; *see also McDonald,* 690 P.2d at 711–15. Therefore, we conclude that this is simply one of the "great majority of cases" where the reasons cited by the trial court correctly permit exclusion of expert testimony on eyewitness identification. *See Chapple,* 660 P.2d at 1220.

## IV

Finally, Johnson assigns error to the trial court's refusal to give any of his three proposed jury instructions on eyewitness identification. However, the jury was given the Washington pattern instruction on credibility of witnesses and weight of testimony, WPIC 6.01, along with the customary instruction on proof beyond a reasonable doubt,

---

[9]In *Moon,* 45 Wn. App. at 698, the discrepancies between the victim's initial description of the robber and the defendant's actual appearance "crie[d] out for some logical explanation." The victim described the robber as 5 feet 10 inches tall with brown hair and a broad, pockmarked mouth; while the defendant was 6 feet 3 inches tall with black hair and a thin, moustached mouth.

[10]It is apparently undisputed that the same person committed each of the four robberies.

WPIC 4.01. These two instructions taken together have been held sufficient to enable the defendant to argue a theory of misidentification. *State v. Delker,* 35 Wn. App. 346, 348–49, 666 P.2d 896, *review denied,* 100 Wn.2d 1016 (1983); *State v. Shriner,* 33 Wn. App. 800, 808–09, 658 P.2d 31 (1983), *rev'd on other grounds,* 101 Wn.2d 576, 681 P.2d 237 (1984); *see also State v. Hall,* 40 Wn. App. 162, 166–67, 697 P.2d 597, *review denied,* 104 Wn.2d 1001 (1985); *State v. Edwards,* 23 Wn. App. 893, 896–97, 600 P.2d 566 (1979).

Affirmed.

WEBSTER and MUNSON, JJ., concur.

Review denied by Supreme Court February 1, 1988.