[Nos. 9208–9–III; 9213–5–III.   Division Three.   June 1, 1989.]

THE STATE OF WASHINGTON, *Respondent*, v. CARLOS GARCIA HERNANDEZ, *Appellant*.

THE STATE OF WASHINGTON, *Respondent*, v. ALFONSO BATISTA, *Appellant*.

*Gary McGlothlen,* for appellant Hernandez (appointed counsel for appeal).

*Walter Curnutt,* for appellant Batista (appointed counsel for appeal).

*Jeffrey C. Sullivan, Prosecuting Attorney,* and *John Monter, Deputy,* for respondent.

MUNSON, J.—Carlos Garcia Hernandez and Alfonso Batista appeal from a judgment and sentence for first degree murder, RCW 9A.32.030(1), and first degree assault, RCW 9A.36.010(1)(a). Mr. Hernandez contends the court erred in: (1) entering an exceptional sentence by making the sentences run consecutively and not concurrently; (2) denying his motion for the appointment of an expert witness to testify as to the reliability of eyewitnesses; and (3) denying his motion for arrest of judgment, or in the alternative, for a new trial. Mr. Batista appeals only the exceptional sentence. We affirm.

On November 3, 1987, Mr. Hernandez and Mr. Batista were in an El Camino with a distinctively painted exterior. They drove up an alley off North Fourth Street in Yakima and stopped behind an apartment house where several individuals were playing dice in the backyard. Mr. Batista was driving; he stopped close to the dice players; Mr. Hernandez got out of the vehicle and shot a number of times

toward the players with an assault rifle. One of the players, Santos Garcia, was killed and another, Jose Sanchez, was shot in the leg. Messrs. Hernandez and Batista were arrested within minutes of the shooting.

On December 30, they moved the court for the appointment of an expert at public expense regarding eyewitness reliability. The motion was denied. They were tried together, and the jury returned verdicts finding both men guilty on both counts. Mr. Hernandez was sentenced to 361 months for the first degree murder conviction and 113 months for the first degree assault conviction. The court found aggravating factors and imposed an exceptional sentence by running the sentences consecutively rather than concurrently. Likewise, Mr. Batista was sentenced to consecutive terms of 388 months and 133 months. His terms were higher because of his criminal history.

Messrs. Hernandez and Batista first assert the trial court erred in sentencing them to consecutive terms, which constitute exceptional sentences. RCW 9.94A.400(1)(a). The Sentencing Reform Act of 1981 (SRA) provides an appellate court may reverse an exceptional sentence only if it finds:

> (a) Either that the reasons supplied by the sentencing judge are not supported by the record which was before the judge or that those reasons do not justify a sentence outside the standard range for that offense; or (b) that the sentence imposed was clearly excessive or clearly too lenient.

RCW 9.94A.210(4).

The analytical framework for reviewing sentences within RCW 9.94A.210(4)(a) was set forth in *State v. Fisher,* 108 Wn.2d 419, 423, 739 P.2d 683 (1987). Here, the court found three aggravating factors: (1) the murder and assault were very deliberate and sophisticated, far exceeding the normal planning and sophistication contemplated by RCW 9.94A-.390(2)(d)(5); (2) the victims were particularly vulnerable; and (3) the multiple offense policy of RCW 9.94A.400(1)(a) results in a sentence that is clearly too lenient.

As to the first aggravating factor, Mr. Hernandez asserts premeditation is an element of the crime charged and, as such, cannot be used to justify an exceptional sentence. *State v. Dunaway,* 109 Wn.2d 207, 743 P.2d 1237, 749 P.2d 160 (1987).

Mr. Hernandez' reliance on *Dunaway* is misguided; if the sophistication and planning is "'of a kind not usually associated with the commission of the offense[s] in question", an exceptional sentence may be imposed. *Dunaway,* at 219; *see also* D. Boerner, *Sentencing in Washington* § 9.6, at 9–12, 9–13 (1985). Here, there was extensive planning in that Mr. Hernandez and Mr. Batista obtained an AK 47 assault rifle and Chinese ammunition, drove through the alley by the apartment complex on numerous occasions, and waited until the victims commenced their dice game. These facts indicate the murder and assault were more an execution than a typical first degree murder and assault. Hence, an exceptional sentence is proper and there was no error.

The second aggravating factor was that the victims were particularly vulnerable. The court made this finding based on the fact the victims were in the backyard of the apartment building. The State relies on *State v. Falling,* 50 Wn. App. 47, 747 P.2d 1119 (1987) and *State v. Kindem,* 338 N.W.2d 9 (Minn. 1983), *cert. denied,* 466 U.S. 974 (1984) to support its contention the backyard constitutes a zone of privacy which is recognized as an aggravating factor. *Falling* held a bedroom constitutes a zone of privacy, and *Kindem,* at 17–18, held a backyard is a zone of privacy stating:

> The final issue is whether the sentencing departure was improper. We hold that it was not. Defendant did an immense amount of planning to determine when the victim would be most vulnerable to being robbed. That turned out to be in the victim's backyard late at night. We have recognized as an aggravating circumstance the instance where a criminal, in committing a crime such as rape or robbery, invades the zone of privacy that surrounds the victim's home. *State v. Van Gorden,* 326

N.W.2d 633 (Minn.1982). That factor clearly is present here.

(Citations omitted.) In *State v. Morales,* 324 N.W.2d 374 (Minn. 1982), the court sustained an exceptional sentence where the 17–year–old rape victim was sunbathing in her backyard.

Washington has held invasion of a zone of privacy may be considered an aggravating factor. *Falling; State v. Ratliff,* 46 Wn. App. 466, 469–70, 731 P.2d 1114 (1987). Normally, the place of a crime is not an element. Federal and state governments have established specific protection against government invasion of the homes and curtilage of its citizens. Likewise, individual conduct has been circumscribed to protect against arson, burglary, and rape. Our citizens have an expectation upon arriving at their residence that they are in a protected zone. They have a right to let down their guard and enjoy the relaxed atmosphere of home and hearth. Furthermore, the curtilage is an area for family recreation and enjoyment, regardless of its size. Many family activities occur in our yards, whether it be visiting with neighbors, having barbecues, or playing catch and other yard sports. In this case, it was a dice game. None of the participants or onlookers were reported to have been armed. They were not expecting a barrage of fire power or an invasion by government or civilian personnel.[1] This crime did not arise out of any conduct involved with the dice game, a complaint of neighbors, or a public demonstration. From all appearances, it was a serene afternoon with a dozen or so citizens enjoying a recreational activity. In this context, these people were particularly vulnerable to a shooting barrage from an assault rifle without any apparent reason. Why this location was chosen, only the defendants knew, and they chose to keep it to themselves. While this vulnerability standing alone might not be sufficient to

---

[1]A neighbor, sitting in his home, testified one of the bullets passed through the exterior wall of his home, smashed a light globe on the base of his revolving ceiling fan, went through a closet wall, and was embedded in the back wall of the closet.

support an exceptional sentence, when taken in context with either of the other reasons given, it does support an exceptional sentence. There was no error.

■ Finally, the court found that the multiple offense policy of RCW 9.94A.390(2)(f) resulted in sentences that were clearly too lenient.[2] Messrs. Hernandez and Batista, on the other hand, contend consecutive sentences in this case are clearly excessive. *See* RCW 9.94A.210(4)(b). A court's decision regarding the length of an exceptional sentence is subject to review only for an abuse of discretion. *State v. Oxborrow,* 106 Wn.2d 525, 530, 723 P.2d 1123 (1986); *State v. Tunell,* 51 Wn. App. 274, 753 P.2d 543, *review denied,* 110 Wn.2d 1036 (1988). A sentence will be reversed as "clearly excessive" only if the trial court's action is one that "no reasonable person would have taken". *State v. Armstrong,* 106 Wn.2d 547, 551–52, 723 P.2d 1111 (1986). As a result of the consecutive sentences, Mr. Hernandez received 474 months' incarceration and Mr. Batista 511 months. Given that each offense for which they were convicted had a maximum sentence of life in prison, there was no abuse of discretion.

■ Mr. Hernandez assigns error to the denial of his motion for the appointment of an expert witness to testify on eyewitness reliability. ER 702 states:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

*State v. Johnson,* 49 Wn. App. 432, 437, 743 P.2d 290 (1987), *review denied,* 110 Wn.2d 1005 (1988) addressed when eyewitness experts should be supplied:

---

[2]By definition, since each count involved a different victim, this incident did not involve the "same criminal conduct". RCW 9.94A.400(1)(a). *State v. Collicott,* 112 Wn.2d 399, 771 P.2d 1137 (1989) is not applicable.

In determining whether to admit expert testimony under ER 702, the court should consider (1) whether the witness is qualified as an expert, (2) whether the opinion is based on an explanatory theory generally accepted in the scientific community, and (3) whether the testimony would be helpful to the trier of fact. *State v. Allery,* 101 Wn.2d 591, 596, 682 P.2d 312 (1984). The admission or exclusion of opinion testimony is within the discretion of the trial court. *State v. Guloy,* 104 Wn.2d 412, 429, 705 P.2d 1182 (1985), *cert. denied,* 475 U.S. 1020, 89 L. Ed. 2d 321, 106 S. Ct. 1208 (1986).

In *State v. Moon,* 45 Wn. App. 692, 726 P.2d 1263 (1986), this court took note of the growing number of cases finding the exclusion of expert testimony on eyewitness identification to be an abuse of discretion in "a very narrow range of cases". *Moon,* 45 Wn. App. at 697 (citing *State v. Chapple,* 135 Ariz. 281, 660 P.2d 1208 (1983)). We characterized those cases by the following three factors: (1) the identification of the defendant is the principal issue at trial, (2) the defendant presents an alibi defense, and (3) there is little or no other evidence linking the defendant to the crime. *Moon,* 45 Wn. App. at 697.

Only the first factor of the identification of Mr. Hernandez is of significance; he did not present an alibi defense; and there was a plethora of evidence linking him to these crimes. While there were minor inconsistencies in the eyewitness identification, in order to require the appointment of an expert, "there must be serious contradictions in the eyewitness testimony, as well as a proper 'fit' between those contradictions and the proposed expert testimony." *Johnson,* at 440 (citing *State v. Moon,* 45 Wn. App. 692, 699, 726 P.2d 1263 (1986)). Here, numerous eyewitnesses identified Mr. Hernandez as the passenger in the vehicle who did the shooting. Juan Flores testified the El Camino repeatedly drove past the apartment house and he saw Mr. Hernandez in the vehicle. Mr. Hernandez was arrested in the El Camino within minutes after the shooting. There was no abuse of discretion. *See generally State v. Guloy,* 104 Wn.2d 412, 705 P.2d 1182 (1985), *cert. denied,* 475 U.S. 1020 (1986).

Last, Mr. Hernandez asserts the trial court erred in denying his motion for arrest of judgment or, in the alternative, for a new trial. He cites no authority to support this contention nor does he argue the error. It will not be considered on appeal. *Cyrus v. Martin,* 64 Wn.2d 810, 394 P.2d 369 (1964).

Both judgments are affirmed.

THOMPSON, C.J., and SHIELDS, J., concur.

Review granted at 113 Wn.2d 1035 (1990).