[No. 12039-9-II. Division Two. August 14, 1990.]

THE STATE OF WASHINGTON, *Respondent*, v. JOSEPH
D. HERNANDEZ, *Appellant*.

*Sandy K. Mostoller* and *Raymond H. Thoenig* of *Department of Assigned Counsel,* for appellant.

*John W. Ladenburg, Prosecuting Attorney,* and *Chris Quinn–Brintnall, Senior Appellate Deputy,* for respondent.

ALEXANDER, C.J.—Joseph D. Hernandez was convicted in Pierce County Superior Court on three counts of robbery in the first degree. He appeals, contending that the trial court erred in (1) denying his motions to arrest judgment and for severance; and (2) excluding testimony concerning the reliability of eyewitness identifications. We reverse counts 1 and 3, concluding that they should have been tried separately. We affirm the other conviction.

On January 25, 1988, a Baskin–Robbins store in Tacoma was robbed. One employee of the store witnessed the robbery. On February 1, 1988, a robbery occurred at another Tacoma Baskin–Robbins. Three store employees witnessed that robbery. On February 4, 1988, a Hallmark store, also in Tacoma, was robbed. One employee was a witness to the incident.

During its investigation of these robberies, the Tacoma Police Department received a tip that Joseph Hernandez was a possible suspect. Consequently, police detectives presented each of the robbery eyewitnesses with a photo montage containing photographs of six persons, one of whom was Hernandez. Hernandez was identified as the robber by all five witnesses, albeit with varying degrees of certainty.

Hernandez was charged with three counts of first degree robbery. A hearing was thereafter held before a Pierce County Superior Court judge on Hernandez' motion to suppress the photo identification. The motion was denied. Trial was set to begin the next day. On the morning of trial, Hernandez' counsel moved for separate trials on all three charges. That motion was also denied. Hernandez renewed his motion to sever at the close of the State's evidence, and again it was denied.

During trial, Hernandez sought admission of the testimony of Kipling Williams, a social psychologist, on the issue of the reliability of eyewitness identifications. In an offer of proof, Williams testified as to the general lack of reliability of eyewitnesses. He indicated that problems arise in three stages of memory: encoding, storage and retrieval. He listed the factors he thought may have affected the witnesses' memories in this case: stress, delay in retrieval, cross–racial identification,[1] a disguised perpetrator, unconscious transference, focus on the weapon, postevent information and the level of witness confidence. He testified

---

[1] Williams apparently felt that cross–racial identification was an issue here since all but one of the witnesses were Caucasian and the defendant was Hispanic.

that, with the exception of witness confidence, a lay person is not aware of the impact of these various factors. On cross examination, Williams conceded that he had not tested the witnesses in this case and had not watched them testify. He also admitted that he had no personal knowledge of the conditions under which the witnesses in this case made their observations. He also acknowledged that a witness's ability to make accurate identifications under stress varies greatly from witness to witness. The State moved to exclude this evidence, and its motion was granted.

A jury found Hernandez guilty on all three robbery counts. Hernandez moved for arrest of judgment on the ground that the State failed to allege "intent" in the information. This motion was also denied.

### FAILURE TO ALLEGE INTENT

■ Hernandez' contention that the trial court erred in denying his motion for arrest of judgment is not well taken. Robbery is defined, by statute, as the unlawful taking of personal property "from the person of another or in his presence against his will by the use or threatened use of immediate force, violence, or fear of injury to that person or his property or the person or property of anyone. . . ." RCW 9A.56.190. Intent is not listed in the statute as an element of robbery in the first degree. While our Supreme Court has held that intent is an element of robbery that must be shown, *State v. Hicks,* 102 Wn.2d 182, 184, 683 P.2d 186 (1984), the State is not required to allege in the information every element that it must prove, unless it is a statutory element. *State v. Strong,* 56 Wn. App. 715, 785 P.2d 464, *review denied,* 114 Wn.2d 1022 (1990); *State v. Smith,* 49 Wn. App. 596, 599, 744 P.2d 1096 (1987), *review denied,* 110 Wn.2d 1007 (1988). The trial court properly denied Hernandez' motion for arrest of judgment.

### SEVERANCE

As noted above, Hernandez moved on the first morning of the trial for separate trials on each count. In denying the

severance motion, the trial court indicated that the defendant had waived his right to obtain a severance because the motion was not made on or before the date of the omnibus hearing. The trial court also commented on what it believed was its ability to correct, by its instructions, any confusion resulting from the multiplicity of charges.

Motions to sever are governed by CrR 4.4. CrR 4.4(a)(1) requires that a motion for severance be made "before trial, except that a motion for severance may be made before or at the close of all the evidence if the interests of justice require." We agree with the trial court that a motion to sever made on the morning of the trial is not a motion made "before trial," as that term is used in CrR 4.4(a)(1). *State v. Harris,* 36 Wn. App. 746, 749, 677 P.2d 202 (1984).

Hernandez attempts to distinguish this case from *Harris,* pointing to problems he had in obtaining discovery, the lack of time between the suppression hearing and the trial, and the fact that the motion was made as soon after the suppression hearing as possible—the next day. None of these facts were discussed in *Harris.* Nevertheless, under a strict reading of CrR 4.4 consistent with *Harris,* it was not error for the trial court to deny the motion at that stage of the trial.

Hernandez' contention that the trial court erred in denying his renewed motion for severance does, however, have merit. As we have observed, CrR 4.4(a)(2) permits a severance motion to be renewed at the close of the State's evidence. Indeed, in *Harris,* we reversed a conviction and remanded the case for retrial because the trial court failed to grant a defense motion for severance at a later stage in the trial. Here, Hernandez' counsel made the motion to sever at the close of the State's evidence and she argued, in support of that motion, that the testimony given by witnesses to all three robberies would be used by the jury to decide each of the three counts interchangeably.

A trial court's refusal to sever charges is reversible only where it constitutes a manifest abuse of discretion. *State v. Watkins,* 53 Wn. App. 264, 269, 766 P.2d 484

(1989); *State v. Harris, supra.* Joinder of charges must not, however, be employed so as to prejudice the defendant. *Watkins,* 53 Wn. App. at 268; *Harris,* 36 Wn. App. at 749–50. In determining whether the trial court's denial of severance amounted to a manifest abuse of discretion requiring reversal we must balance the prejudice that flows to the defendant when evidence of multiple offenses is introduced against any "prejudice–mitigating" factors that are present. The prejudice–mitigating factors are:

> (1) the strength of the State's evidence on each count, (2) the clarity of defenses as to each count, (3) whether the trial court properly instructed the jury to consider the evidence of each crime, and (4) the admissibility of evidence of the other crimes.

*Watkins,* 53 Wn. App. at 269 (citing *State v. Gatalski,* 40 Wn. App. 601, 607, 699 P.2d 804, *review denied,* 104 Wn.2d 1019 (1985)). We will discuss the fourth factor first.

This case is somewhat akin to *Harris,* in which we held that the defendant was prejudiced by the trial court's refusal to sever charges. *Harris,* 36 Wn. App. at 752. The defendant in *Harris* was charged with two counts of rape and the counts were tried together. The State argued that there was no prejudice to the defendant because evidence of each rape would have been admissible at separate trials as evidence of a common scheme or plan. We rejected this argument, holding that to do so would be to equate acts and circumstances that are merely similar in nature with the more narrow concept of a common scheme or plan. *Harris,* 36 Wn. App. at 751. We concluded that it was inherently prejudicial for the two counts to be tried together when proof of one could not have been brought forth at a trial on the other.

■ The State argues that evidence concerning all of the robberies would have been admissible at separate trials on each count under ER 404(b) to prove the "identity" of the assailant. We disagree. Evidence of other crimes is relevant on the issue of identity only if the method employed in the commission of both crimes is "so unique" that proof that an

accused committed one of the crimes creates a high proba-
bility that he also committed the other crimes with which
he is charged. *State v. Smith,* 106 Wn.2d 772, 777, 725 P.2d
951 (1986).

Here, there is no evidence that the methods employed in
these robberies was unique. While the stores that were
robbed were similar, there was no showing that the robber-
ies were committed in an unusual or unique manner. In
each case, the robber entered the store, pulled a knife,
asked for the money and fled upon receiving it. There is
nothing about this method of robbery that suggests it is
highly probable that the same robber committed all three
crimes. We conclude, therefore, that evidence of any one of
the charges here would not have been admissible in a sepa-
rate trial on either of the other two charges. Consequently,
cross admissibility may not be considered as a "prejudice-
mitigating" factor.

The existence of the second and third factors does, how-
ever, mitigate somewhat against the prejudice which flowed
to Hernandez. Regarding the second factor, Hernandez'
defense on each count was clear. Although Hernandez did
not testify, it was apparent that his defense on all charges
was the same—a general denial. As we have noted, his
counsel sought to impeach the testimony of the eyewit-
nesses in an effort to show that there had been a misiden-
tification. The likelihood that joinder would cause the jury
to be confused as to the accused's defenses is very small
where the defense is identical on each charge. Insofar as the
third factor is concerned, the trial court properly instructed
the jury to consider each crime separately and refrain from
letting its verdict on one count control its verdict on
another.[2]

---

[2]Instruction 5 read as follows:

"A separate crime is charged in each count. You must decide each count sepa-
rately. Your verdict on one count should not control your verdict on any other
count."

Finally, we consider the strength of the State's evidence on each count. Hernandez' conviction was due primarily to the fact that he was identified by eyewitnesses. As we have observed, these witnesses identified Hernandez with differing degrees of certainty. The witness to the January 25 robbery of the Baskin–Robbins store was initially reluctant to identify Hernandez. On the day before trial, he could only be "65 percent" certain that Hernandez was the robber. Furthermore, the witness's testimony was not corroborated. Much the same can be said of the Hallmark store robbery. Although the witness to that robbery said that she was "positive" Hernandez was the robber, her testimony was not corroborated.[3] Because the State's evidence on these two counts was somewhat weak, any prejudice flowing from the joinder would likely be significant.

On the other hand, the February 4 robbery of the Baskin–Robbins store was witnessed by three persons. Each of these witnesses expressed great certainty about their identification of Hernandez. When asked, one witness said he was "100 percent" certain. Another said she was "98 percent" certain. The third said she was "75 to 80 percent" certain that Hernandez was the robber. The State's evidence on this count was strong and the prejudice caused by the joinder was easily mitigated.

Looking at all of the factors, including the fact that evidence on each count would not have been admissible at separate trials as well as the fact that the State's evidence on counts 1 and 3 was weak, we conclude that the denial of the severance motion amounted to a manifest abuse of the trial court's discretion.

■ Despite the error, we must consider whether the trial court's error was harmless. Where, within reasonable probabilities, the outcome of the trial would not have been

---

[3] A second employee was presented with the photo montage and asked to identify the man she briefly saw just before the robbery. Because the employee was in a storeroom at the time the robbery actually occurred, she said she could not be sure that Hernandez was the same man she saw in the store. The detective testified that he did not consider it to be an identification.

different had the charges been severed, the error is deemed harmless. *Watkins,* 53 Wn. App. at 273. It is apparent to us that where the prosecution tries a weak case or cases, together with a relatively strong one, a jury is likely to be influenced in its determination of guilt or innocence in the weak cases by evidence in the strong case. We believe there is a high probability that the outcome of the first and third counts would have been different if the counts had been tried separately. The testimony supporting these counts was uncorroborated and the jury's judgment on those counts was probably tainted by the joinder. Consequently, the trial court's error in not severing the counts was harmful and reversal is required. On the other hand, because the State's case on count 2 was quite strong, we believe the outcome of that case would not have been different had the severance motion been granted. We affirm the conviction on count 2.

### EXPERT TESTIMONY REGARDING EYEWITNESS IDENTIFICATION

Hernandez assigns error to the trial court's exclusion of the testimony of Kipling Williams on the subject of eyewitness identification. Although we are reversing counts 1 and 3, we must, of course, address this issue insofar as it relates to count 2. In addition, our resolution of this issue may be important upon retrial of the other two counts.

██ The refusal to admit expert testimony on the subject of eyewitness testimony is a matter within the discretion of the trial court. *State v. Coe,* 109 Wn.2d 832, 750 P.2d 208 (1988). Consequently, the trial court will not be reversed for excluding such evidence absent a showing that there was an abuse of that discretion. *State v. Guloy,* 104 Wn.2d 412, 430, 705 P.2d 1182 (1985), *cert. denied,* 475 U.S. 1020 (1986). A trial court only abuses its discretion when its exercise of that discretion is manifestly unreasonable or based on untenable grounds. *Davis v. Globe Mach. Mfg. Co.,* 102 Wn.2d 68, 77, 684 P.2d 692 (1984).

In support of his position, the defendant cites *State v. Moon,* 45 Wn. App. 692, 726 P.2d 1263 (1986). In that case, Division One of this court held that the rejection of this type of testimony constituted an abuse of discretion:

> (1) where the identification of the defendant is the principal issue at trial; (2) the defendant presents an alibi defense; and (3) there is little or no other evidence linking the defendant to the crime.

*Moon,* 45 Wn. App. at 697. In a more recent case, *State v. Johnson,* 49 Wn. App. 432, 743 P.2d 290 (1987), *review denied,* 110 Wn.2d 1006 (1988), the court added the additional requirement that there be:

> serious contradictions in the eyewitness testimony, as well as a proper "fit" between those contradictions and the proposed expert testimony.

*Johnson,* 49 Wn. App. at 440. *See also State v. Taylor,* 50 Wn. App. 481, 749 P.2d 181 (1988) and *State v. Hernandez,* 54 Wn. App. 323, 773 P.2d 857 (1989) (cases in which Division Three followed *Johnson*). We respectfully decline to follow the lead of those courts. We are unwilling to *require* trial courts to admit this type of testimony, even in the circumstances outlined in those cases.[4] In our judgment, the trial court's discretion should not be so limited.

Here, the trial court excluded the testimony because it found that it was not helpful to the jury. This was not error. Essentially, Williams' testimony related to witness credibility and we conclude, as did the trial court, that the jury was able to determine credibility under the trial

---

[4]We note that in *State v. Ward,* 55 Wn. App. 382, 777 P.2d 1066, *review denied,* 113 Wn.2d 1029 (1989), Division One expressly stated that *Moon* and *Johnson* were not inflexible formulas to be followed in every case. There, the court specifically held that "[t]o confine the trial court within the narrow boundaries of the three criteria listed in *Moon* would strip the court of its traditional discretionary judicial function." *Ward,* 55 Wn. App. at 387. Instead, the determinative question is "will the expert testimony be helpful to the trier of fact?" *Ward,* 55 Wn. App. at 385.

court's instructions.[5] While Hernandez was careful during his offer of proof to elicit testimony from Williams that was directed toward eyewitnesses in general, and not specifically toward the eyewitnesses in this case, a jury might very well interpret the testimony as a recommendation that they disbelieve these eyewitnesses in particular. To require that this type of evidence be admitted is to mandate the use of experts on a subject that, in our judgment, is often better left to the jury. Furthermore, the introduction of this type of testimony frequently has the potential of turning trials into battles between experts over the value of eyewitness identifications. We do not believe that this battle needs to be waged in every case.

Our decision that the trial court has considerable discretion in regard to the admission of this type of evidence is buttressed by decisions from several circuits of the United States Court of Appeals in which this type of evidence has met with disapproval. The Tenth Circuit has held that a trial court did not err in rejecting expert testimony on eyewitness identification because such evidence invades the "field of common knowledge, experience, and education of men." *United States v. Brown,* 540 F.2d 1048, 1054 (10th Cir. 1976), *cert. denied,* 429 U.S. 1100, 51 L. Ed. 2d 549, 97 S. Ct. 1122 (1977). Likewise, the Ninth Circuit concluded that such testimony "would invade the province of the jury". *United States v. Brown,* 501 F.2d 146, 150 (9th Cir. 1974), *rev'd on other grounds,* 422 U.S. 225, 45 L. Ed. 2d 141, 95 S. Ct. 2160 (1975). The Ninth Circuit has also relied on the important fact that this type of evidence can be

---

[5]The trial court instructed the jury as follows:

"You are the sole judges of the credibility of the witnesses and of what weight is to be given the testimony of each. In considering the testimony of any witness, you may take into account the opportunity and ability of the witness to observe, the witness' memory and manner while testifying, any interest, bias or prejudice the witness may have, the reasonableness of the testimony of the witness considered in light of all the evidence, and any other factors that bear on believability and weight."

brought out adequately by the questioning of the eyewitnesses on cross examination. In *United States v. Christophe,* 833 F.2d 1296 (9th Cir. 1987), the court reminded us that "skillful cross examination of eyewitnesses, coupled with appeals to the experience and common sense of jurors, will sufficiently alert jurors to specific conditions that render a particular eyewitness identification unreliable. . . ." *Christophe,* 833 F.2d at 1300. *See also United States v. Amaral,* 488 F.2d 1148 (9th Cir. 1973). The Seventh Circuit has also held that expert testimony on eyewitness identification is properly excludable because "it addresses an issue of which the jury already is generally aware, and it will not contribute to their understanding of the particular dispute." *United States v. Hudson,* 884 F.2d 1016, 1024 (7th Cir. 1989). In *Johnson v. Wainwright,* 806 F.2d 1479 (11th Cir. 1986) the court concluded that a trial court's exclusion of this testimony should be upheld on due process grounds because determination of eyewitness perception is not beyond the ability of the lay person. *See also United States v. Watson,* 587 F.2d 365 (7th Cir. 1978) (work in the field not sufficiently developed to admit testimony on cross–racial identifications), *cert. denied,* 439 U.S. 1132, 59 L. Ed. 2d 95, 99 S. Ct. 1055 (1978).

We are not unmindful of the fact that the opportunity and ability of eyewitnesses to make accurate identifications varies greatly and that it may well be influenced by many external and internal factors. In some cases, expert testimony on this subject may be helpful. We are convinced, however, that in most cases, these factors can be adequately brought out on cross examination.

In conclusion, we are persuaded, after reviewing this case and the authorities cited above, that the exclusion of the expert's testimony was not an abuse of discretion.

Hernandez' convictions on counts 1 and 3 are reversed. His conviction on count 2 is affirmed.

WORSWICK, J., concurs.

PETRICH, J. (dissenting)—While I have no quarrel with the majority's conclusion that it was not an abuse of discretion to exclude opinion evidence on the fallibility of eyewitness identification or its treatment of the severance issue, I would have reversed on all counts because an essential element of the offense of robbery was not included in the charging document. It makes little sense to acknowledge that absence of a statutory element of the offense in the charging document requires dismissal of charges but that elimination of an essential element as determined by the common law does not. My view of this issue has been adequately expressed in my dissent in *State v. Strong*, 56 Wn. App. 715, 720, 785 P.2d 464, *review denied*, 114 Wn.2d 1022 (1990), and need not be repeated here.

Reconsideration denied October 25, 1990.

Review by Supreme Court pending March 15, 1991.