455 S.E.2d 724

Joaquin Alberto RODRIGUEZ

v.

COMMONWEALTH of Virginia.

Record No. 2150–93–4.

Court of Appeals of Virginia,
Alexandria.

April 4, 1995.

Clinton O. Middleton, Sr. Asst. Public Defender (Office of the Public Defender, on briefs), for appellant.

Thomas C. Daniel, Asst. Atty. Gen. (James S. Gilmore, III, Atty. Gen., on briefs), for appellee.

Present: BARROW,* KOONTZ and FITZPATRICK, JJ.

FITZPATRICK, Judge.

In this consolidated appeal of three separate jury verdicts, the sole issue raised is whether the trial court erred in failing to allow expert testimony on the suggestiveness of eyewitness

---

\* Judge Barrow participated in the hearing and decision of this case prior to his death on March 28, 1995.

identification procedures and the questionable reliability of eyewitness testimony. Finding no error, we affirm the trial court.

## BACKGROUND

On June 8, 1993, Joaquin Alberto Rodriguez (appellant) was convicted of (1) robbery of Linda Loggins (Loggins) and (2) use of a firearm in the commission of a felony. At the next trial on June 17, 1993, appellant was convicted of (1) malicious wounding of Mary Rodimon (Rodimon), (2) attempted abduction of Rodimon, and (3) use of a firearm in the commission of a felony. At the final trial on June 29, 1993, appellant was convicted of (1) robbery of John Mullany (Mullany), (2) abduction of Mullany, and (3) use of a firearm in the commission of a felony.

Two victims, Loggins and Mullany, were shown the same photo array and failed to identify appellant. However, at separate live-body lineups, all three victims identified appellant as the assailant. In addition, in each case, other evidence established appellant's guilt. Loggins clearly identified appellant in the lineup, gave the police a detailed description of her attacker, and also worked with a police sketch artist. In the incident involving Rodimon, a police officer saw appellant near the crime scene when the officer responded to the shooting, and a tennis shoe impression recovered from the scene matched appellant's shoes. Finally, in the third case, a second witness corroborated Mullany's testimony and identified appellant from a photo of the lineup.

At the first trial, appellant attempted to call as an expert witness Dr. Gary Wells (Wells), a Ph.D. in experimental social psychology, who would testify as to unreliability of eyewitness identification and "the specific problems within this identification, not just the general inherent difficulties with regard to eyewitness identification." Appellant proffered Wells's expected testimony that: (1) the subjects in photo arrays and live lineups should match the description of the culprit, not the suspect; (2) police fillers should not be used in lineups because

they are more confident and homogeneous; (3) anything in a lineup or photo array that makes the suspect stand out as distinctive should be eliminated; (4) a positive lineup identification following a photo array is partially the result of the witness's memory of the photos; (5) a witness will rarely make a different decision in a subsequent identification; (6) misidentification is especially prevalent when stress, poor lighting, or a long delay between the crime and the identification is present; and (7) no correlation exists between an eyewitness's confidence and the accuracy of his identification.

After hearing the proffered testimony, the trial judge stated:

> While Dr. Wells' research is interesting and undoubtedly gives a scientific basis for things, I don't think there's a single thing he said that you couldn't argue to this jury. I mean, most of it is common sense. It's simply something everybody knows.
>
> . . . .
>
> I think ... the jury knows ... if you put somebody in there that looks different that makes them stand out and the identification is less reliable. I think that if a jury knows that then you don't need an expert to tell them that.

The trial judge refused to allow the proffered testimony.

Appellant attempted to introduce the same evidence at the second and third trials. In each instance, the trial judge incorporated the proffered testimony from the first trial into the record.[1] The trial judge allowed photographs of the lineup to be admitted in all three trials, and the photo array was admitted in the first and third trials.[2]

---

1. In the second trial involving Rodimon, the trial judge allowed an additional proffer regarding the accuracy of identifications involving emotional reactions.

2. The victim Rodimon from the second trial did not view the photo array.

## ADMISSIBILITY OF EXPERT TESTIMONY
## ON EYEWITNESS IDENTIFICATIONS

■ The admissibility of expert testimony on problems associated with eyewitness identification is an unresolved issue. in the Commonwealth. *See Singleton v. Commonwealth,* 16 Va.App. 841, 842, 433 S.E.2d 507, 508 (1993). However, " '[t]he standard of review on appeal where the admissibility of expert testimony is challenged is whether the trial court abused its discretion.' " *Archie v. Commonwealth,* 14 Va.App. 684, 694, 420 S.E.2d 718, 723 (1992) (quoting *Kern v. Commonwealth,* 2 Va.App. 84, 86, 341 S.E.2d 397, 398 (1986)). "The credibility of the witnesses is within the exclusive province of the finder of fact...." *Estes v. Commonwealth,* 8 Va.App. 520, 524, 382 S.E.2d 491, 493 (1989).

■ In Virginia, expert opinions are admissible only if the matter of inquiry is such that inexperienced persons are unlikely to prove capable of forming a correct judgment upon it, for the reason that the subject matter so far partakes of the nature of a science, art or trade as to require a previous habit of experience or study in it to acquire a knowledge thereof.

*Hubbard v. Commonwealth,* 12 Va.App. 250, 254, 403 S.E.2d 708, 710 (1991) (quoting *Neblett, Adm'r v. Hunter,* 207 Va. 335, 339–40, 150 S.E.2d 115, 118 (1966)), *aff'd on other grounds,* 243 Va. 1, 413 S.E.2d 875 (1992). "Conversely, 'where the facts and circumstances shown in evidence are such that men of ordinary intelligence are capable of comprehending them, forming an intelligent opinion about them, and drawing their own conclusions,' expert opinion 'founded upon such facts is inadmissible.' " *Schooler v. Commonwealth,* 14 Va.App. 418, 420, 417 S.E.2d 110, 111 (1992) (quoting *Venable v. Stockner,* 200 Va. 900, 904, 108 S.E.2d 380, 383 (1959)).

The majority of state and federal courts that have addressed the issue of expert testimony on an eyewitness identification have upheld the trial court's exclusion of such testimony. *See, e.g., United States v. Amaral,* 488 F.2d 1148, 1152–53 (9th Cir.1973); *United States v. Harris,* 995 F.2d 532, 534 (4th

Cir.1993); *State v. Hernandez*, 58 Wash.App. 793, 794 P.2d 1327, 1332 (1990), *review denied*, 117 Wash.2d 1011, 816 P.2d 1223 (1991); *Porter v. State*, 188 Ga.App. 675, 373 S.E.2d 805, 807 (1988); *State v. Kemp*, 199 Conn. 473, 507 A.2d 1387, 1390 (1986); *People v. Brown*, 100 Ill.App.3d 57, 71, 55 Ill.Dec. 429, 438, 426 N.E.2d 575, 584 (1981). "The refusal to admit expert testimony on the subject of eyewitness testimony is a matter within the [sound] discretion of the trial court." *Hernandez*, 794 P.2d at 1332.

In excluding expert commentary on eyewitness identifications, courts have consistently found that this type of testimony interferes with the jury's role as fact finder and its duty to weigh the credibility of witnesses. *See id.; Kemp*, 507 A.2d at 1389–90. " '[T]he trustworthiness of eyewitness observations is not generally beyond the common knowledge and experience of the average juror and is, therefore, not a proper subject for expert testimony.' " *Brown*, 55 Ill.Dec. at 438, 426 N.E.2d at 584 (quoting *People v. Dixon*, 87 Ill.App.3d 814, 818, 43 Ill.Dec. 252, 256, 410 N.E.2d 252, 256 (1980)). In addition, "[t]he weaknesses of identifications can be explored on cross-examination and during counsel's final arguments to the jury." *Kemp*, 507 A.2d at 1390. Another concern is that "this type of testimony frequently has the potential of turning trials into battles between experts over the value of eyewitness identifications." *Hernandez*, 794 P.2d at 1332.

Even the minority jurisdictions that allow eyewitness identification expert testimony acknowledge the discretion of the trial judge in deciding whether to allow such evidence. *See United States v. Downing*, 753 F.2d 1224, 1226 (3d Cir.1985); *People v. McDonald*, 37 Cal.3d 351, 208 Cal.Rptr. 236, 254, 690 P.2d 709, 727 (1984); *State v. Chapple*, 135 Ariz. 281, 660 P.2d 1208, 1223 (1983) (*en banc*). In *McDonald*, the Supreme Court of California stated: "We expect that such evidence will not often be needed, and in the usual case the appellate court will continue to defer to the trial court's discretion in this matter." 208 Cal.Rptr. at 254, 690 P.2d at 727.

Indeed, the few courts allowing such testimony have done so exclusively "under circumstances described as 'narrow.'" *Harris*, 995 F.2d at 534. In *Harris*, while following the majority approach, the Fourth Circuit Court of Appeals listed examples of circumstances that may require this type of testimony: "such problems as cross-racial identification, identification after a long delay, identification after observation under stress, and psychological phenomena as the feedback factor and unconscious transference." *Id.* at 535.

Additionally, this Court has consistently refused special instructions concerning the reliability of eyewitness identifications because such instructions have the "effect of emphasizing the testimony of those witnesses who made identifications." *Wise v. Commonwealth,* 6 Va.App. 178, 189, 367 S.E.2d 197, 203 (1988). *See also Johnson v. Commonwealth,* 2 Va.App. 447, 457, 345 S.E.2d 303, 309 (1986). We concluded that "[t]he jury was properly instructed on ·... the jury's function in determining the credibility of the witnesses ... [and] that further instruction on the credibility and reliability of identification testimony was unnecessary and inappropriate." *Wise,* 6 Va.App. at 189, 367 S.E.2d at 203.

We adopt the majority approach that the decision whether to allow expert testimony concerning an eyewitness identification is a decision left to the sound discretion of the trial court. By asking an expert to render an opinion about the propriety of lineup procedures and the reliability of eyewitness identifications, a defendant in effect asks the expert to comment upon the credibility of the identifying witness, an issue clearly within the jury's province. Under traditional rules governing the admissibility of expert testimony, "men of ordinary intelligence" are capable of understanding the inherent problems with lineup identifications and eyewitness testimony and of drawing rational conclusions based on the facts and circumstances. In this case, the trial judge specifically found that each type of information proffered by appellant was mere common sense and that appellant could argue the problems with the lineup identifications in closing argument. The

judge fully considered the evidence proffered and did not abuse his discretion in failing to admit the expert testimony.

Although expert testimony on this issue may be appropriate in a given case, these three incidents do not present the "narrow" circumstances that may require this type of expert testimony. None of the information proffered by appellant represents the kind of psychological information that courts have allowed. In this case, the expert's testimony concerned: (1) the proper subjects for photo arrays and live lineups; (2) the use of police fillers in lineups; (3) the elimination of anything in a lineup or photo array that makes the suspect stand out as distinctive; (4) the unreliability of a subsequent identification; (5) the prevalence of misidentification in situations involving stress, poor lighting, or delay; and (6) the uncertain relationship between eyewitness confidence and accuracy. Each concept was within the lay knowledge of the jurors and could be adequately argued in closing argument.

Furthermore, at all three trials, the Commonwealth introduced into evidence the photo array, except in the trial involving Rodimon, and a picture of the live lineup. The jury was capable of evaluating whether the lineup and photo spread were fair or whether these devices unfairly pointed to appellant as the assailant. Finally, other evidence besides the lineup identifications was present in each case: (1) Loggins gave a detailed description and worked with a police sketch artist; (2) a police officer saw appellant near where Rodimon was attacked, and appellant's tennis shoes tied him to the scene; and (3) a second witness corroborated Mullany's testimony by identifying appellant.

For these reasons, we hold that, in this case, the trial court did not abuse its discretion in excluding the expert testimony. Accordingly, the decision of the trial court is affirmed.

*Affirmed.*